Hillsborough County Probate Court
No. 7315

*In re* BESSIE E. ROBBINS ESTATE

April 30, 1976

*Clancy & O'Neill* for Raymond E. Lorden, executor of the estate of Bessie E. Robbins, filed no brief.

*Albert J. Lipnick,* guardian ad litem, filed no brief.

GRIFFITH, J. Certification of questions of law by the Hillsborough County Probate Court (*Copadis,* J.), pursuant to RSA 547:30 relating to questions of administration and distribution in the estate of Bessie E. Robbins who died testate April 15, 1975.

The certified questions transferred are:

1. Is the federal estate tax due by virtue of decedent's death included among the taxes directed to be paid out of the residue under article sixth of the will, or is it to be paid by apportionment among all persons interested in the estate, pursuant to RSA ch. 88-A?

2. Is the tax due the State of New Hampshire under RSA 86:6 to be paid as directed in article sixth of the will, or is it to be

paid by receiving from each legatee and devisee an amount equal to the tax assessed upon each legacy and devise, pursuant to RSA 86:60?

3. Is the State of New Hampshire tax due upon two savings accounts held jointly by the testatrix and the executor Raymond E. Lorden, assessed pursuant to RSA 86:8 (Supp. 1975), payable out of the residue under the direction of article sixth of the will, or is it to be paid by the surviving joint owner?

4. Is the Town of Hollis real property tax, assessed upon record owners on April 1, 1975, payable out of the residue of the estate, or is it to be paid by the specific devisee of the real property?

5. Does the decedent's motor vehicle pass under articles third and fourth of the will, which bequeath "the contents of my house", or is it a part of the residue under article fifth, page 2 of the will?

The answer to the first three questions transferred are governed by the directions contained in the following provision in the testatrix's will:

> *Sixth:* I direct my executor hereinafter named to pay any and all inheritance taxes which may be due the State of New Hampshire from the residue of my estate insofar as the same may be sufficient to pay the same.

In the absence of instructions in the will federal estate taxes before 1938 were prorated among the beneficiaries who took under the will. *Amoskeag Trust Company v. Trustees of Dartmouth College,* 89 N.H. 471, 200 A. 786 (1938), overruled an earlier court ruling and held that in the absence of direction federal estate taxes should be paid out of the residue of the estate. RSA ch. 88-A, the Uniform Estate Tax Apportionment Act (1959), overruled the *Amoskeag* case by statute and returned to the pre-1938 rule. Subsequently, in the following two cases the court was able to discern a testamentary intention that the federal estate tax be paid out of the residue, where the testamentary direction as to what funds should bear the tax was inartfully worded. In the case of *In re Whitelaw Estate,* 104 N.H. 307, 185 A.2d 65 (1962), the will directed that all

legacy and inheritance taxes should be paid out of the residue. While there was no mention of federal estate taxes the same clause stated that all legatees should receive "the full amount or value of their respective legacies." This phrase in the context of the whole will was held to indicate an intention to charge the tax to the residue and to satisfy the provisions which made the apportionment required by statute inapplicable when the "will otherwise provides." RSA 88-A:2. *In re Annie G. Crozier Estate,* 105 N.H. 440, 201 A.2d 895 (1964), held that the direction to pay "inheritance taxes out of my estate" indicated an intention to pay both estate and inheritance taxes out of the residue since "inheritance tax," considering the context of the will as a whole, was used in its popular and nontechnical sense as including an estate tax. The case further noted that the will manifested an intent to prefer specific legacies and bequests over the residuary beneficiaries.

From these cases, it will be noted that "this jurisdiction has sought to carry out the testator's plan as to the incidence of Federal and state taxes even in the face of some ambiguity and opacity in the will." *Young v. Dunton,* 106 N.H. 249, 251, 209 A.2d 719, 720 (1965). Even were we to interpret "inheritance taxes" in this will as including the federal estate tax, the language specifically limits the taxes to those due the State of New Hampshire. This will is silent as to federal taxes and in the context of the will we find nothing that will permit an inference as to the testatrix's wishes in this regard. While it is true that the will appears to prefer bequests and the specific devise over the residue, it should be noted that the three largest bequests of $15,000 each go to the three residuary legatees. "It is doubtful that either the testatrix or the scrivener gave any specific thought to the [federal estate tax] but in any event the will uses no language sufficient to show an intention to change the statutory incidence of the tax as provided by [RSA 88-A]." *In re Grondin Estate,* 98 N.H. 313, 316, 100 A.2d 160, 163 (1953).

It follows that the answer to the first question is that the federal estate tax is to be apportioned pursuant to RSA ch. 88-A. The answer to the second question is that the taxes due the State of New Hampshire pursuant to RSA 86:6 are to be paid as directed in article sixth of the will.

The third question asks us to determine whether the testatrix intended article sixth to apply to succession taxes owed on certain jointly owned bank accounts, which are nontestamentary assets. While no New Hampshire cases dealing with this issue have been brought to our attention, decisions in other States turn upon the

comprehensiveness of the language used by the decedent in the exonerating clause. For example, where the will provides in effect that the tax on legacies shall be paid from the residuary estate, the surviving joint owner is not relieved of tax liability, since he does not obtain the property through the will and is not a legatee. Where, however, the tax clause of the will is not limited to those taxes levied with respect to benefits derived under the will, it may be sufficient to exonerate the survivor from the tax and impose the burden on the residuary estate. *See Central Trust Co. v. Lamb,* 74 Ohio App. 299, 58 N.E.2d 785 (1944); *In re Halle's Will,* 270 App. Div. 619, 61 N.Y.S.2d 694 (1946); Annot., 1 A.L.R.2d 1101, 1111-13 (1948); Annot., 37 A.L.R.2d 7, 59-77 (1954). The language utilized by the testatrix herein was "any and all inheritance taxes which may be due." We find this comprehensive designation, unmodified by qualifying language of any sort, sufficient to place the case at bar in the latter category. Accordingly, we hold that succession taxes due the State of New Hampshire on the jointly owned bank accounts under RSA 86:6 (Supp. 1975) are to be paid out of the residue of the estate, pursuant to article sixth of the instrument.

As to the fourth question, real property taxes assessed by the town of Hollis upon the testatrix on April 1, 1975, prior to her demise, are a debt of the estate. The tax for the whole year is an obligation of the record owner as of April 1, and the tax becomes due and payable as of that date. *Gilford v. State Tax Commission,* 108 N.H. 167, 169, 229 A.2d 691, 693 (1967); *Fuller v. Gale,* 78 N.H. 544, 546, 103 A. 308, 309 (1918); *Jaffrey v. Smith,* 76 N.H. 168, 173, 80 A. 504, 506 (1911); 31 Am. Jur. 2d *Executors and Administrators* § 253 (1967); Annot., 163 A.L.R. 724, 727-28 (1946).

The final question, which concerns the disposition of the decedent's motor vehicle, again requires us to determine the testatrix's intent from the language of the will. *In re Farnsworth Estate,* 109 N.H. 15, 16, 241 A.2d 204, 205 (1968). Article third of the will bequeaths to five different relatives "such of the contents of my house as they want, without limitation." Article fourth bequeaths to a sixth relative "such of the contents of my house as have not been selected under paragraph Third hereof." Since no contrary intent appears in the will, the words "the contents of my house" are to be given the ordinary meaning they bear in common usage. *Sylvester v. Newhall,* 97 N.H. 267, 270, 85 A.2d 378, 381 (1952). Webster's Third New International Dictionary defines "content" as "something that is contained . . . ." "Contents of my

house," therefore, refers to objects which customarily are kept inside the home. The holding in *Cowan v. Cowan,* 90 N.H. 198, 6 A.2d 179 (1939), that an automobile was intended to be included in the life estate in the homestead and contents bequeathed to the testator's widow is unique and distinguishable. In the *Cowan* case, a reading of the will in its entirety revealed that the language "my house . . . and contents of all kinds" was used to refer to all the land and buildings comprising the testator's homestead, together with the contents thereof. An automobile is primarily used off the premises and, whether or not its garage is attached to the house, would ordinarily be no more a part of the contents of that house than would be a horse in the barn.

*Remanded.*

All concurred.