No. 91-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MATTER OF THE ESTATE OF
DOROTHY E. MORRIS,

     Deceased,

LINDA WELLS, MARY ELIZABETH DUBOIS,
DONNA JUNE WOOD, BETTY SUE MATNEY,
BILL E. WOOD AND MAY NA MORRIS GAGE,

     Appellants,

    -Vs-

ROBERT W. THOMPSON,

     Respondent.

**FILED**

AUG 19 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of **Toole**,
The Honorable R. D. McPhillips, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Marc G. Buyske argued, Anderson, Beatty & Buyske,
Shelby, Montana

    For Respondent:

        Donald R. Marble argued, Marble Law Office, Chester,
Montana


Submitted:  May 5, 1992

Decided:  August 19, 1992

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the Ninth Judicial District, Toole County, requiring state inheritance taxes from the estate of Dorothy Morris to be apportioned pursuant to §72-16-603, MCA. The appellants contend that the language of the will provides an alternative method of apportionment which should govern. The respondent, Robert Thompson, has cross-appealed on the issue of attorney fees. We reverse on the apportionment question and affirm on the attorney fees.

There are two issues for our review:

1.  Did the District Court err in determining that the testamentary intent, as expressed in the will of Dorothy Morris, was not sufficiently clear so as to overcome the statutory directive as to apportionment of state inheritance taxes?

2.  Did the District Court err in denying Thompson's request for attorney fees?

Dorothy Morris, a widow, who had no surviving descendants, died testate on December 29, 1988. The Last Will and Testament of Dorothy Morris was informally admitted to probate by order of the District Court. The will provided that after the payment of certain expenses and specific bequests the residue of the estate was to be divided between two groups of beneficiaries, the Thompson heirs and the Morris heirs. The Thompson heirs represent the only blood relatives of the decedent, while the Morris heirs are relatives of the deceased husband of the decedent. On the Thompson

2

side, there are twenty beneficiaries and on the Morris side there are seven beneficiaries.

The Thompson heirs, as blood relatives of the decedent, are entitled to an exemption and their inheritances are taxed at a lower rate. The Morris heirs would not receive the exemption and would be taxed at a higher rate. The Morris heirs contend that the taxes should be paid first and the remainder of the residue should then be equally divided between the two groups. The Thompson heirs petitioned the court requesting that the residue should be equally divided between the two groups and that the state inheritance taxes should then be apportioned to each individual according to § 72-16-603, MCA. The District Court agreed with Thompson and ordered apportionment pursuant to § 72-16-603, MCA. Additionally, the District Court denied Thompson's request for attorney fees. The Morris beneficiaries appealed the decision of the District Court concerning apportionment and the Thompsons cross-appealed on the issue of attorney fees.

Montana's statutory scheme for apportionment of state inheritance taxes is found at § 72-16-603, MCA, which states:

> (1) Except as provided in subsection (3) and unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are to be used for that purpose.

> (2) If the decedent's will directs a method of apportionment of tax different from the method described in this part, the method described in the will controls.

3

(3) If the liabilities of persons interested in the estate as described in this part differ from those which result under the federal estate tax law, the liabilities imposed by the federal law control and the balance of this part applies as if the resulting liabilities had been prescribed in this part.

The statute places the burden of the inheritance tax on the recipients of the decedent's bounty. The Thompsons argue that under subsection 1 of the statute, all state inheritance taxes should be paid by the residuary beneficiaries in the proportion that the value of the interest of each person interested in the residuary estate bears to the total value of the interests of all persons interested in the estate. However, subsection 2 of the statute allows the tax burden to be shifted and taxes to be apportioned by an alternative method if the will so provides.

The question before the Court is whether the will provides a method of apportioning state inheritance taxes different from that set out in the statute. As such, the issue presented is a question of law and our review will be plenary. We will decide if the District Court's determination as to law is correct. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The significant provisions of the will relating to payment of the taxes are as follows:

SECOND

I direct my Personal Representative hereinafter named to pay all of my just debts, my funeral expenses, the expenses of administering my estate, and all taxes both State and Federal which become payable by reason of my death, out of my estate.

4

Paragraphs THIRD and FOURTH provided for specific bequests to various people and are not at issue in this case. The FIFTH paragraph states as follows:

> I direct my Personal Representative to convert all the remaining assets of my estate to cash, and after payment of the items mentioned at Paragraph Second above, and the specific legacies mentioned in Paragraph Third and Paragraph Fourth above, 1 hereby give and devise the residue of my estate as follows:
>
> 1. The one half thereof unto the grandchildren, living at the time of my death, of the following: [the Thompson grandchildren]
>
> . . . .
>
> 2. The remaining part thereof unto the children, living at the time of my death, of the following: [the Morris grandchildren]
>
> . . . .

The District Court relied on a Wyoming case, In Re Ogburn's Estate (Wyo. 1965), 406 P.2d 655, for its finding that Dorothy Morris's will was insufficient to show her intent to bypass the statutory apportionment provisions of the state inheritance taxes. In Ogburn, the disputed language in the will stated: "I direct the payment of all my just debts, taxes, funeral expenses and expense of administration of my estate."

The Wyoming Supreme Court initially set out the distinction between federal estate taxes and state inheritance taxes. According to the Wyoming Court, because federal estate taxes are a tax on the privilege of transferring an interest in the property upon death it is generally considered an obligation of the estate. However, state inheritance taxes are an obligation upon the

5

recipients of the testatrix's bounty. The Wyoming Court then held that the statement "all my . . . taxes . . . of my estate" referred only to federal estate taxes and was not sufficiently clear and unambiguous to include state taxes as well. The Wyoming Court concluded that the will was ambiguous and did not provide for an alternative method of apportioning state taxes because it failed to expressly provide the testators' intent to include state as well as federal taxes.

In the instant case, the District Court determined that the language in the will might have been sufficient to shift the burden of the federal estate taxes, but was not sufficiently clear to shift the burden of the state inheritance taxes to the residuary estate. Considering the entire will, we disagree. Dorothy Morris refers specifically to "all taxes both State and Federal which become payable by reason of my death". This provision explicitly refers to all state taxes, which become payable by reason of her death, which language is missing in the will in Ogburn. State inheritance taxes are clearly a state tax which becomes payable as a result of Dorothy Morris's death. The District Court's reliance on Ogborn is misplaced. We conclude that the language of the will is clearly sufficient so as to include state inheritance taxes.

The intention of the testatrix is to be ascertained from the words of the will which are to be taken in their ordinary and grammatical sense. In re the Estate of Delong (1990), 242 Mont. 15, 788 P.2d 889. The plain and clear language of the will indicates that the specific bequests, costs of administration, and

all state and federal taxes are to be paid first.  The remainder of the residuary estate is to be equally divided between the two families.  The intent of the testatrix must be found from all parts of the will which are to be construed in relation to each other so as, if possible, to form one consistent whole.  Estate of Evans (1985), 217 Mont. 89, 704 P.2d **35**.

Looking first at Paragraph Second, as stated above, we conclude that it was Dorothy Morris's expressed intent to have the estate pay all state taxes which include inheritance taxes.  Moving then to Paragraph Fifth, Dorothy Morris provides clear instructions regarding the calculation and distribution of the residue of her estate, and how the amount of distribution to each side of the family is to be calculated.  First, the personal representative is instructed to convert the residuary estate to cash.  Second, the personal representative is instructed to pay the items listed in paragraph second.  Third, Dorothy Morris clearly instructs the personal representative that <u>"after payment of the items listed in Paragraph Second above"</u> (the state inheritance tax included) and after payment of the specific legacies of paragraphs third and fourth, the personal representative is then to divide the amount of the residue one-half to the Thompson heirs and the remaining one-half to the Morris heirs.

Reading Paragraphs Second and Fifth together, we conclude the will clearly and unambiguously demonstrates that Dorothy Morris intended and directed the amount of the residue of her estate to be calculated, divided and distributed <u>after</u> payment of the state

7

inheritance taxes. To calculate and compute in accordance with Thompson's position, the personal representative would omit the amount of all of the state inheritance taxes from the deductions to be paid first in Paragraph Fifth, then divide the balance of the residue 50 percent to the Thompson devisees and the remaining 50 percent to the Morris devisees, and then deduct from each devisee his/her proportionate share of the state inheritance tax. However, Dorothy Morris provided an alternative method.

Clear and unambiguous provisions in a will expressing the intent of the decedent can shift the tax burden from those upon whom the statute imposes it. §72-16-603(2), MCA. The respondent argues that the will fails to specifically mention apportionment, non-apportionment or the controlling statute and therefore fails to properly express any intent to shift the tax burden. However, an express reference to §72-16-603, MCA, is neither mandated by the statute nor necessary to clearly and unambiguously state a desire for an alternative method of apportionment. The will need only provide direction for "a method of apportionment of tax different from the method described" in the statute. 972-16-603(2), MCA. When the will so directs, "the method described in the will controls". §72-16-603(2), MCA.

We conclude that the will of Dorothy Morris by not only designating the shares and the beneficiaries, but by also mandating how to calculate each of these shares, provides a clear and unambiguous method of apportionment that is an alternative to the

method provided by statute.  Therefore, the method described in the will is controlling and the District Court is reversed.

## II.

Did the District Court err in denying Thompson's request for attorney fees?

The District Court denied Thompson's request for attorney fees on the grounds that neither case law nor statutes had been cited which would permit an award of attorney fees in this situation. Thompson relies on §72-12-206, MCA, which provides:

> When the validity or probate of a will is contested through court action, the fees and expenses must be paid by the party contesting the validity or probate of the will, if the will in probate is confirmed.  If the probate is revoked, the costs must be paid by the party who resisted the revocation or out of the property of the decedent, as the court directs.

The instant case does not involve the validity or probate of a will and as such, we agree with the District Court that §72-12-206, MCA, does not apply.  The District Court is affirmed in its denial of attorney fees.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

9

_____
Justices

Justice William E. Hunt, sr., dissenting.

I dissent. I would affirm the order of the District Court in which the court determined that the language in the will was not sufficiently clear so as to override the statutory directive in § 72-16-603, MCA, concerning the apportionment of state inheritance taxes.

Under the common law, the residuary estate was obligated to pay the death taxes. Appellants argue that in this situation the residuary estate should pay the state inheritance taxes. This would greatly benefit appellants in that they can avoid paying at the higher rate which would be required if all the heirs paid the state inheritance taxes at their individual rates. However, the legislature, for good reason, has changed the method of payment of taxes that existed under the common law. They provided, in § 72-16-603, MCA, that:

> (1) Except as provided in subsection (3) and unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.

> (2) If the decedent's will directs a method of apportionment of tax different from the method described in this part, the method described in the will controls.

The strong policy arguments in support of this change in the common law were explained in the case of New York Trust Co. v. Doubleday (Conn. 1956), 128 A.2d 192. In Doubleday, the testator's children from a previous marriage sought to benefit from his widow's marital exemption by paying taxes out of the residuary

10

estate prior to dividing it between the parties. This is exactly what appellants are attempting to do in this situation. In finding in favor of apportionment, and allowing the widow the full value of her exemption, the court stated:

> Only through the allocation of the entire amount of the marital allowance to the value of the widow's bequest will the intent as well as the spirit of the proration statute be met, for the statute is based on the equitable principle that the estate taxes should be borne by those whose bequests contribute to the tax burden and, conversely, that all those whose legacies do not in any way create or add to that burden should not be required to bear it.

Doubleday, 128 A.2d 196-97.

While § 72-16-603(2), MCA, permits the results argued for by appellants in this case, it is clear that the direction of the statute in favor of apportionment and the policy reasons which led to the enactment of the statute, require clear and unambiguous language to override the statutory directive in favor of apportionment. The language in this will which appellants contend expresses the testatrix's desire to avoid apportionment pursuant to § 72-16-603, MCA, is less than clear and unambiguous.

The language in this will is similar to the language in the will in In Re Ogburn's Estate (Wyo. 1965), 406 P.2d 655. In Ogburn, the will read "I direct the payment of all my just debts, taxes, funeral expenses and expense of administration of my estate." Ogburn, 406 P.2d at 657. The Wyoming Court initially set out the difference between federal estate taxes and state inheritance taxes. Federal estate taxes are taxes upon the estate for the privilege of transferring the property upon death. State

11

inheritance taxes are not taxes upon the estate at death, but rather are taxes which are the burden of the recipients of the testatrix's bounty. Under this analysis the phrase in the will "all my just . . . taxes" was construed to include only the federal estate taxes. The language used was simply insufficient to override the apportionment statute as to the state inheritance taxes. The Wyoming court stated that:

> Practically all of the cases agree that a directive against apportionment should be expressed in clear and unambiguous language. . . . In case of doubt the burden of the taxes must be left where the law places it. [Citation omitted.] It has been said that a sufficient tax clause should expressly state "(1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted."

Osburn, 406 P.2d at 657-58.

The District Court found that this criteria was not met and that the intent of the testatrix was not clear from the language used in the will. The will states that the personal representative is directed to pay "all taxes both state and federal which become payable by reason of my death, out of my estate." State inheritance taxes are imposed upon the recipients of the property for the privilege of receiving that property.

There is no language in the will that clearly and unambiguously sets forth any authority on the part of the personal representative to pay taxes other than by apportionment. When, as here, there is ambiguity and doubt as to the intent of the testatrix, the burden of the state inheritance taxes should remain were the law places it. It appears that the majority opinion here

12

requires a surviving spouse to show that any bequest to any other person is not to be apportioned, rather than the other way around--the other way around being the intention of the legislature to change the common law that required that inheritance taxes be paid from the residual estate.

I would affirm the District Court.

_William E. Hunt Sr._
Justice

Justice Fred. J. Weber dissents as follows:

I agree with the reasoning of the dissent of Justice Hunt. I believe additional comments are appropriate.

The key holding of the majority opinion is the following conclusion:

> We conclude the will clearly and unambiguously demonstrates that Dorothy Morris intended and directed the amount of the residue of her estate to be calculated, divided and distributed <u>after</u> payment of the state inheritance taxes.

In substance the majority concludes that the residue is to be <u>calculated, divided and distributed</u> after payment of the Montana inheritance taxes. That conclusion ignores the factual necessity of both dividing and calculating before distribution of the residue can be accomplished. Federal estate tax is levied against the entire estate and therefore can be paid and deducted prior to any computation of the residue. In contrast, the Montana inheritance tax is levied upon the share passing to each of the twenty-seven individual residuary devisees.

We agree that the personal representative can be properly required to pay the just debts, funeral expenses, and expenses of administration as well as the estate taxes before any computations are required with regard to the residue. All of those can be paid without any division of the residuary estate or calculation. However, when it comes to the Montana inheritance tax, that no longer is true. Under the Montana inheritance tax, the residue must be divided and the tax computed before the Montana inheritance tax can be paid.

14

I suggest that the only reasonable method to be followed is that after payment of the just debts, funeral expenses, expenses of administration and the federal estate tax, the personal representative must make the following division and calculations:

1. Divide the amount on hand in the estate at that point so that one-half will be listed as going to the Thompson grandchildren, and the remaining one-half to the Morris grandchildren.

2. Divide the one-half going to the Thompson grandchildren into twenty equal parts. Next calculate the Montana inheritance tax which is due from each of such twenty grandchildren.

3. In a similar manner, divide the remaining one-half between the seven Morris grandchildren. Then calculate the Montana inheritance tax due from each of those seven grandchildren, taking into consideration both the exemption and the tax rates.

I suggest that it is only after a division and calculation as above described that the Montana inheritance taxes can be paid. Once those Montana inheritance taxes have been calculated, such taxes properly may be paid by the estate. Distribution then would follow to each of the twenty-seven residuary legatees based upon the share attributable to each less the Montana inheritance tax paid for that person.

I concur in the conclusion by Justice Hunt that essential fairness requires the type of division described above and adopted by the District Court. It is unfair to require a tax to be paid by persons who are not actually receiving the property as is proposed

by the majority opinion.  Such action is not contemplated by the statute.

I would affirm the District Court.

_____
Justice

Justice Terry N. Trieweiler

_____
Justice
**Justice**

August 19, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Marc G. Buyske
Anderson, Beatty & Buyske
P.O. Drawer D
Shelby, MT  59474

Donald R. Marble
Marble Law Office
P.O. Box 649
Chester, MT  59522

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy