■ In the Matter of the Estate of ILSE HERZ, Deceased. YORK WINTER, Appellant; AMERICAN PARKINSONS DISEASE ASSOCIATION, INC., et al., Respondents. [614 NYS2d 514] —Decree of the Surrogate's Court, Bronx County (Lee Holzman, S.), entered February 22, 1993, which denied petitioner's application for an order construing decedent's will as requiring her executors to pay the German "Erbschaftsteuer" tax, levied against petitioner, affirmed, without costs.

Respondents American Parkinsons Disease Association, Inc., Visiting Nurse Service of New York, and Arthritis Foundation are residuary beneficiaries under the last will and testament of Ilse Herz. Petitioner, a resident of Germany, is the beneficiary of a $250,000 legacy and other items of personal property of the decedent. Petitioner seeks reimbursement from the residuary estate pursuant to Article Thirteenth of the Will for the $115,372 German "Erbschaftsteuer" tax imposed upon his legacy.

Article Thirteenth of the Will provides as follows: "Thirteenth: All estate, inheritance, and other death taxes, payable by reason of my death, shall be paid out of my estate as an expense of administration without apportionment or proration. This clause covers all testamentary and non-testamentary property whether passing before, on or after my death."

The issue on appeal is whether the "Erbschaftsteuer" constitutes an inheritance tax or otherwise falls within this provision of the will. The Bronx Surrogate ruled that it does

not. The Surrogate reasoned that underlying the holdings in the more recently decided cases is the sound premise that, absent the most compelling indication that this was the decedent's intent, the legacies to residuary legatees—who frequently are the people or causes most important to the decedent—should not be significantly reduced or abated by dint of a foreign tax imposed personally against legatees because they reside in the particular jurisdiction.

We agree with the Surrogate that the German tax levied upon petitioner's legacy by virtue of his residence in Germany is in the nature of an "acquirer" tax, not an "estate", "inheritance" or "other death tax" as those terms are commonly understood by New York testators and courts (*Matter of Jandorf,* 41 Misc 2d 712; *Matter of Baer,* 161 Misc 797; *Matter of Gotthelf,* 152 Misc 309; *see also, Matter of Williams,* 60 Misc 2d 952, 953), and that the will does not otherwise contain a clear direction that the residuary legatees bear the expense of such tax. As neither double taxation nor fiscal evasion is an issue in this matter, The Convention Between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Estates, Inheritances and Gifts, relied upon by petitioner and the dissent, is inapposite. Its characterization of the "Erbschaftsteuer", for the particular purposes of the treaty, is not implicated absent a clear showing that the subject matter falls within its purview. Nor are we inclined to overrule substantial precedent defining the tax for the purpose of payment by the estate because a dictionary happens to assign a different general meaning.

We further agree that petitioner's conversations with the decedent regarding her intent were properly barred under CPLR 4519. Similarly, any conversations petitioner may have had with the attorney who prepared the will, who is also deceased, are excludable on the same ground and as hearsay. Finally, to require the estate to pay $115,000 to the German government would be inconsistent with the decedent's directions, in Article Eleventh of the will, that petitioner keep all money received from her estate *"outside* of Germany" (emphasis in original) and that he give no part thereof to relatives presumably residing in that country. Concur—Ellerin, Ross and Rubin, JJ.

Rosenberger, J. P., and Kupferman, J., dissent in a memorandum by Kupferman, J., as follows: Mrs. Ilse Herz died domiciled in the Bronx. She was born in Germany and was a

citizen thereof until she emigrated to the United States in 1936 at the age of 33.

The petitioner-appellant York Winter is the decedent's grandnephew. He is a German domiciliary and was resident there at the time Mrs. Herz drew her will in 1988, although between 1984 and 1987 he lived in the United States with the decedent.

Mr. Winter is a legatee and co-executor under the Herz Will and he petitioned the Surrogate's Court for an order construing Article "Thirteenth" of the Will to determine whether the estate should pay the German inheritance tax levied upon his bequest.

Article "Thirteenth" provides: "All estate, *inheritance* and other death taxes, payable by reason of my death, shall be paid out of my estate as an expense of administration without apportionment or proration. This clause covers all testamentary and non-testamentary property whether passing before, on or after my death." (Emphasis added.)

Under the Will, Winter received personal and household effects and furniture and, pursuant to Article "Eleventh", the sum of $250,000, "on the condition that he keeps these funds for himself and does not give them to his parents or sisters or brother and keeps them *outside* of Germany." (Emphasis in original.)

After bequeathing $20,000 to the Kingsbridge Lutheran Church and providing for remuneration to the Pastor for a blessing, there is a precatory request that $50,000 of the York Winter bequest be used "for the upkeep of the graves of my parents and sister, the arrangement of which York Winter is familiar with" and that a similar sum be used for the storage and upkeep of certain furniture bequeathed to him.

The respondents, charitable residuary legatees and the Attorney-General, oppose the application, and the parties stipulated that the matter be submitted for determination on the papers.

The tax in dispute, called Erbschaftsteuer in German (which translates into inheritance tax), is payable regardless of the situs of the funds, and amounts to $115,372, based on the legacy's value.

Petitioner contends that his great aunt was aware of the German inheritance tax and had discussed the matter with him. She obviously had discussed aspects of the estate with him as the aforementioned provision for care of the graves indicates.

The objectants contend, and the Surrogate agreed, that Article "Thirteenth" is an "ordinary boiler plate tax apportionment clause" and was not intended to reduce so substantially for a foreign tax the amounts going to charity. However, such language, whether characterized as "boilerplate" or not, is clear and unambiguous in its terms, does not conflict with any other provision in the Will, and represents "a clear and unambiguous direction against apportionment of taxes as prescribed by section 124 of the Decedent Estate Law [now EPTL 2-1.8 (a)]" *(Matter of Pepper,* 307 NY 242, 246).

When that section was enacted in 1930, it was designed to alter the prevailing rule which imposed the entire burden of estate taxation upon the residuary beneficiaries, thus tending to adversely affect the immediate family, which normally benefitted under the residuary disposition. As originally enacted, the statute provided only for the apportionment of New York and Federal taxes, except in cases where the testator otherwise directs, omitting any reference to estate or other death taxes imposed under the law of any other jurisdiction. That distinction, alluded to by the Surrogate and made in the cases relied upon by the objectants, between taxes imposed under the laws of this country and those imposed by foreign jurisdictions was statutorily removed by the Legislature in 1965, when it amended the statute to include "any foreign country" (L 1965, ch 482) and again, in 1966, when it eliminated some prolixity by requiring the apportionment of any estate or other death tax imposed by "the law of this state or of any other jurisdiction" (L 1966, ch 952; Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 2-1.8, at 143).

The objectants also postulate that the condition in Article "Eleventh" that the funds stay *"outside* of Germany" shows intent to keep the funds here for the charitable residuary legatees. Again, however, that direction is just as consistent with keeping the funds out of the hands of the specified relatives which, it was conceded upon oral argument, was Mrs. Herz' primary concern.

Contrary to the Surrogate's characterization of it in his opinion as an "acquirer tax" (in his later order he refers "to it" as "the German inheritance taxes"), the Erbschaftsteuer is consistently translated as an "inheritance tax" *(see, e.g.,* Dictionary of Legal, Commercial and Political Terms, Part I English-German, Matthew-Bender & Company, Inc., New York 1985 [incorporating American usage]). Moreover, the Erbschaftsteuer is specifically referred to as an inheritance

tax in article 2 (1) (b) of The Convention Between the United States of America and the Federal Republic of Germany For the Avoidance of Double Taxation With Respect To Taxes on Estates, Inheritances and Gifts, which entered into force June 27, 1986 (TIAS No. 11082, 1986 WL 193161). As with all treaties, "[i]t is the supreme law of the land (U. S. Const., art. VI, cl. 2) of which New York courts are required to take judicial notice (CPLR 4511, subd. [a])." *(Rosman v Trans World Airlines,* 34 NY2d 385, 392.)

Thus, despite the Surrogate's characterization of it as an "acquirer tax" and not an "estate", "inheritance" or "other death tax" as those terms are, supposedly, commonly understood by New York testators and courts and the line of cases relied upon by him and the majority which, in addition to being distinguishable from the instant case, are all unreviewed trial court cases and not binding on this Court, the Treaty's designation of the Erbschaftsteuer as an "inheritance" tax is binding.

That inheritance taxes may be paid, as directed in the Will, out of the residuary estate, "even where under the statute imposing the tax such tax would ordinarily be payable by the legatee out of the legacy received" is well established *(Farmers' Loan & Trust Co. v Winthrop,* 238 NY 488, 493, *cert denied* 266 US 633), and while the Surrogate's point is well taken that attorneys drafting wills should ideally make specific reference to foreign taxes not prevalent in this country, nevertheless, on the present record, the Erbschaftsteuer involved here clearly comes within the meaning of inheritance tax as used in Article "Thirteenth". To construe such article otherwise would defeat the express intention of decedent that $150,000 of her bequest be used by Mr. Winter for his own personal use with the remainder to be used for care of the furniture and the upkeep of the graves.

Inasmuch as it is undisputed that Mrs. Herz knew that her grandnephew resided in Germany, there is no support for respondents' argument that she did not want her money benefitting anyone in Germany, including the German government. Moreover, although the issue has not been considered by the parties, it appears from the terms of article 11 of the aforementioned Treaty that the estate could be afforded a credit for its payment of the Erbschaftsteuer against any estate tax liability it might have.

Accordingly, the decree of the Surrogate's Court, Bronx County (Lee L. Holzman, S.), entered February 22, 1993, which construed the provision of the Will for payment of taxes as

not including the German inheritance tax or Erbschaftsteuer imposed on petitioner York Winter, should be reversed, on the law, and such provision construed to include such tax, without costs.