919 A.2d 641

Bruce PFEUFER

v.

Pamela J. CYPHERS, Personal Representative
of the Estate of James Russell Hoffman.

No. 141, Sept. Term, 2004.

Court of Appeals of Maryland.

March 19, 2007.

644

James D. Walsh (Walsh & Company, P.A., Columbia, on brief), for appellant.

John R. Rjaden, Silver Spring, for appellee.

Argued before BELL, C.J., RAKER, WILNER,* CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The instant case involves the interpretation of language in the Last Will and Testament of James Russell Hoffman, the testator, and the effect of that language in light of Maryland Code (1988, 2004 Repl.Vol.), § 7–203(b)(2) of the Tax–General Article.[1] The testator left his residuary estate to four people, three of whom are relatives of the testator and, therefore, pursuant to the above statute, each of whom is exempt from paying inheritance taxes on his or her share of the residuary estate. That is not the case with Bruce Pfeufer, the fourth residuary legatee, the appellant. He is not a relative of the

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Section § 7–203 provides, in relevant part:

 \* \* \* \* \* \*

"(b) Family allowance.—(1)(i) In this subsection the following words have the meanings indicated.

"(ii) 'Child' includes a stepchild or former stepchild.

"(ii) 'Parent' includes a stepparent or former stepparent.

"(2) The inheritance tax does not apply to the receipt of property that passes from a decedent to or for the use of:

 \* \* \* \* \* \*

"(iv) a child of the decedent . . .

 \* \* \* \* \* \*

"(vi) a brother or sister of the decedent. . . ."

testator and, thus, he does not enjoy any such exemption. Nevertheless, the appellant contended in the Orphans' Court for Montgomery County that, even though the statute does not contain an exemption from paying inheritance tax for him, Article III of the testator's will, because it requires that any inheritance tax be paid prior to apportionment or, "off-the-top," in effect, does. The Orphans' Court did not agree and, rather than apportion the tax, ordered the tax to be paid solely by the appellant. The appellant noted an appeal to the Court of Special Appeals. He asked that court to decide whether a testator may provide in his will that inheritance taxes be paid from the entire residuary estate prior to apportionment among the residuary legatees when a statute provides that some of the residuary legatees are not required to pay inheritance taxes.[2]

On our own motion and prior to proceedings in the Court of Special Appeals, we issued a writ of certiorari, *Pfeufer v. Cyphers,* 385 Md. 161, 867 A.2d 1062 (2005). We shall hold that a testator may direct inheritance taxes to be paid from the entire residuary estate prior to apportionment among residuary legatees even when a statute exempts some of the residuary legatees from the payment of inheritance taxes. Thus, we shall reverse the judgement of the Orphans' Court.

## I.

The testator's will provided that his residuary estate be distributed equally to Pamela J. Cyphers, his daughter, the appellee,[3] to James Russell Hoffman, Jr., his son, to Janice Carol Hoffman, his sister, and to the appellant. Section 7-203(b) exempts from payment of inheritance taxes enumerated relatives of the testator, including children and siblings. As

---

2. As phrased by the appellant, the issue presented was:
 "Did the Trial Court err in holding [that] all the inheritance tax should be borne solely by appellant instead of being paid out of the residuary estate prior to division into shares?"

3. Ms. Cyphers is also the testator's personal representative.

the appellant is not one of such enumerated relatives, the statute does not exempt him from the payment of such taxes.

In an amended First and Final Administration Account for the estate, the appellee deducted the inheritance tax due on the appellant's residuary bequest [4] from the entire residuary estate before allocating the balance of the residuary estate in equal shares to each of the four residuary legatees. She did so on the authority of Article III of the testator's will, which provides:

> "I direct that all estate, inheritance, transfer, legacy or succession taxes, or death duties (including interest and penalties thereon) which may be assessed or imposed with respect to my estate, or any part thereof, of whatever nature and description and wheresoever situated, ... shall be paid out of the principal of my residuary estate; *and such payment shall be made as an expense of the administration of my estate without apportionment.*" (Emphasis added.)

Over a month later, apparently prior to distribution of the residuary estate, the appellee filed an Amended Schedule G to the Account, which reallocated the payment of the inheritance tax. Rather than from the residuary estate, the inheritance tax now was to be paid entirely from the appellant's share of the residuary estate. Excepting to the reallocation, the appellant argued that the appellee's initial allocation of the inheritance tax burden was correct, Article III of the will required that such taxes be paid out of the entire residuary estate and not solely from his portion of the residuary estate. The Orphans' Court for Montgomery County overruled the exception, holding that the allocation of the tax burden reflected in Amended Schedule G was appropriate. It reasoned:

> "All right. Well, this may be one of those battle-of-the-forms kind of situations, where you have boilerplate language that is, in most cases, not a problem, but in a rare

---

**4.** The amount of the inheritance tax due on appellant's share of the residuary estate was $14,500.

case such as this, a problem is created when sort of stock boilerplate language is used and that may be what happened here. I think the legislative intent, as indicated by Section 7–203(b) of the Tax–General Article, is very, very clear that lineal legatees are exempt from inheritance tax pursuant to that section. That is the clear intent of the legislature. And, for those reasons, the exceptions are overruled."

This appeal ensued. For the reasons that follow, we shall reverse the judgment of the Orphans' Court.

## II.

It is well settled that the "findings of fact of an Orphans' Court are entitled to a presumption of correctness." *New York State Library School Ass'n v. Atwater*, 227 Md. 155, 157, 175 A.2d 592, 593 (1961); *Shapiro v. Marcus*, 211 Md. 83, 88, 124 A.2d 846, 849 (1956). It is equally well settled, however, that interpretations of law by such courts are not entitled to the same " 'presumption of correctness on review: the appellate court must apply the law as it understands it to be.' " *Comptroller of Treasury v. Gannett Co. Inc.*, 356 Md. 699, 707, 741 A.2d 1130, 1141 (1999) *(quoting Rohrbaugh v. Estate of Stern*, 305 Md. 443, 447 n. 2, 505 A.2d 113, 115 n. 2 (1986). Thus, an appellate court, including this Court, must determine whether the conclusions of law made by a trial court in the first instance are "legally correct under a de novo standard of review." *Banks v. Pusey*, 393 Md. 688, 697, 904 A.2d 448, 454 (2006) (quotations omitted)); *see Bern–Shaw Ltd. Partnership v. Mayor and City Council of Baltimore*, 377 Md. 277, 291, 833 A.2d 502, 510 (2003); *J.L. Matthews, Inc. v. Maryland–National Capital Park and Planning Comm'n*, 368 Md. 71, 93, 792 A.2d 288, 301 (2002).[5]

---

5. The parties have not directed us to, and we have not found, any cases of this Court expressly stating the standard of review for appeals from the Orphans' Court. *Cf. Hall v. Morris*, 213 Md. 396, 402, 132 A.2d 113, 116 (1957) (noting that in prior decisions, the Court has held that the judgment of the Orphans' Court on a disputed question of fact, litigated by adversary proceedings, should not be reversed unless clearly erroneous); *Shapiro v. Marcus*, 211 Md. 83, 88, 124 A.2d 846, 849

## III.

When construing a will, the "paramount concern of the court is to ascertain and effectuate the testator's expressed intent." *Emmert v. Hearn,* 309 Md. 19, 23, 522 A.2d 377, 379 (1987) *(citing LeRoy v. Kirk,* 262 Md. 276, 279, 277 A.2d 611, 613 (1971); *Wm. D. Shellady, Inc. v. Herlihy,* 236 Md. 461, 471, 204 A.2d 504, 509 (1964); *Marty v. First Nat'l Bank of Baltimore,* 209 Md. 210, 216–17, 120 A.2d 841, 844 (1956)). In other words, the search is not for the testator's "presumed [intention] but for his *expressed intention." LeRoy,* 262 Md. at 279, 277 A.2d at 613 *(citing Marty,* 209 Md. at 216–17, 120 A.2d at 844) (emphasis added). Generally, that intent is "gathered from the four corners of the will, *Reedy v. Barber,* 253 Md. 141, 148, 251 A.2d 882[, 887] (1969), with the words of the will given their 'plain meaning and import.'" *Emmert,* 309 Md. at 23, 522 A.2d at 380 *(quoting LeRoy,* 262 Md. at 280, 277 A.2d at 613). Words having legal significance, however, "will be construed in that sense unless the will clearly indicates otherwise." *Emmert,* 309 Md. at 23, 522 A.2d at 380 *(citing Patchell v. Groom,* 185 Md. 10, 15, 43 A.2d 32, 35 (1945)).

In *Johnson v. Hall,* 283 Md. 644, 392 A.2d 1103 (1978), this Court was asked to resolve who, as between the residuary legatee and the beneficiaries named in the last will and testament at issue, has the obligation for the payment of the federal estate taxes "assessed on the worldly goods owned by the testatrix at the time of her death." *Id.* at 645–46, 392 A.2d at 1105. Maryland Code (1974), § 11–109 of the Estates and Trusts Article required federal and Maryland estate taxes to be apportioned "among all persons interested in the estate,"

(1956) (noting that there is a presumption when an appeal is taken from an Orphans' Court of the correctness of that court's decision on a disputed question of fact where such a question has been litigated by adversary proceedings).

Nevertheless, under the circumstances of this case, we see no need to deviate from the standard of review that we have applied to interpretations and conclusions of law by courts of general jurisdiction.

unless "otherwise provided in the will." [6] The personal representative, apparently in reliance on this provision, sought the permission of the Orphans' Court to apportion the estate taxes due in respect to the testatrix's death among all of the beneficiaries named in the will. *Id.* at 646–47, 392 A.2d at 1105–06. Two of the beneficiaries opposed such an order. They relied on that provision of the testatrix's will that declared:

> "I direct that all lawful debts I owe at the time of my death, including funeral and administration expenses and the expense of my last illness (but not including debts secured by mortgages on real property, except matured obligations as they fall due), and all estate and inheritance taxes, be paid as soon after my death as can lawfully and conveniently be done."

They argued that this provision expressed the intention of the testatrix that the burden of the taxes be borne by the residuary estate. *Id.* at 647, 392 A.2d at 1105. The Orphans' Court rejected the beneficiaries' argument and entered an order apportioning the taxes, pro rata, among all of the beneficiaries, a ruling that was reversed by the Court of Special Appeals. *Hall v. Johnson,* 38 Md.App. 589, 382 A.2d 332 (1978).

Agreeing with the Orphans' Court, we reversed the judgment of the intermediate appellate court. At the outset, we pointed out that § 11–109 envisioned the supremacy of the intention of the testator or testatrix, as reflected in the

---

**6.** Maryland Code (1974) § 11–109 of the Estates and Trusts Article (the current version of this statute is found in Maryland Code (1988, 2004 Repl.Vol.), § 7–308 of the Tax–General Article), as relevant, provided:

"(b) Persons among whom tax to be apportioned. The (federal and Maryland estate taxes) shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.

* * * * * *

"(k) Applicability. Except as otherwise provided in the will, or other controlling instrument, the various provisions of this section shall apply to the apportionment of, and contribution to, the federal and Maryland estate taxes."

language of the will, stating that its "application of the rule of apportionment set out in subsection (b) is mandatory, '*unless the will evinces an expression of intent to the contrary,*'" *Johnson v. Hall,* 283 Md. at 648, 392 A.2d at 1106 (emphasis in original), and noted its consistency with, thus reiterating and emphasizing, "the firmly established rule [7] that, unless prohibited by statute or public policy, the intent of the testator as ascertained from the four corners of the will controls the disposition of a decedent's estate." *Id.* at 648–49, 392 A.2d at 1106. We also observed:

> "under tax apportionment statutes an intention not to apportion must be plainly stated in the will or other controlling instrument before the legislative scheme can be ignored.... In examining a will for the purpose of fixing estate tax responsibility, the court should not try to discern what the testator meant to say, but what he meant by what he did say, for a few simple words, which need not be couched in terms of a negative direction against apportionment, will be sufficient if they demonstratively express the testator's intent."

*Id.* at 649, 392 A.2d at 1106–07 (citations omitted).

We held that the language of the will, on which the beneficiaries relied, did not sufficiently express the intention of the testatrix that the estate taxes be paid in a manner different from, or otherwise than, that required by § 11–109. We explained:

> "Accepting the premise, as all courts on both sides of this controversy do, that a statute directing apportionment will only be ignored if the testator clearly and unambiguously indicates that to be his intention, we fail to see how the first clause, whether read in isolation or examined in the context

---

7. This rule has been "firmly established" for over 170 years. In *Creswell's Lessee v. Lawson,* this Court stated:

> "[I]t is also settled, that where the intent of the testator is apparent, no word shall be added or dropped, *to defeat such intention; which must prevail,* if it can be carried into effect without violating some settled principle of law."

7 G. & J 227, 248 (1835) (emphasis added).

of the entire will, in any way expresses Dr. Johnson's desire that all the beneficiaries should not share proportionately the bite of the federal estate tax."

*Id.* at 652, 392 A.2d at 1108 (footnote omitted). Further elucidating, the Court stated:

"We recognize, of course, that our failure to give the language of the first clause the import respondents assert it deserves relegates it to little more than a restatement of the statutory duties of the executor.... Yet, we do not think this interpretation in any way vitiates the rule of construction that 'words in a will are never to be rejected as meaningless or repugnant if by any reasonable construction they may be given effect and made consistent and significant.' ... Simply because the words of the will restate the law or add nothing of substance to what would have occurred without them does not deprive those words of their effect for they are indicative of the testator's intent and must be respected and carried out independently of any parallel, consistent provisions of the law.... Further, the logic of respondent's argument that by mentioning taxes the testatrix must have intended something other than what the law provides requires that they likewise be able to assign some special role, other than one parroting the law, to the remainder of the words of the first clause directing payment of expenses and debts. This they make no effort to do.

"No magic or mystical word or phrase is required to shift the burden of estate taxes from the legatees and devisees to the residue; however, for us to recognize that the testatrix's ritualistic, 'boiler plate' reference to the payment of debts, expenses, and taxes in the first clause of her will states an intent not to apportion would require that we be clairvoyant. In short, we detect no direction by the decedent in the first paragraph of her will not to apportion taxes as section 11–109 provides."

*Id.* at 654–55, 392 A.2d at 1109–10 (citations omitted) (footnote omitted).

*Bouse v. Hutzler,* 180 Md. 682, 26 A.2d 767 (1942) is to like effect. In that case, involving calculation of inheritance tax when a testator directs that it be paid from the residuary estate, we commented:

"The Maryland inheritance tax is imposed on the privilege of becoming a beneficiary under a will or of succeeding to an inheritance. Under the Maryland statute, the executor, administrator, or other person making distribution is charged with the payment of inheritance taxes to the Register of Wills for the use of the State. Code 1939, Art. 81, § 112.[8]

"However, since the tax is a charge against each distributive share according to its value, the executor, administrator or other person must pay the tax out of the legacy, devise, or distributive share of the estate or with money collected from the legatee, devisee, or heir. *Of course, a testator has the*

---

**8.** The current version of that statute is Maryland Code (1988, 2004 Repl.Vol.), § 7–216 of the Tax–General Article. It reads, in relevant part:

"§ 7–216. *Person required to pay tax; source.*

"(a) In *general.*—(1) Except as otherwise provided in this section, the inheritance tax on property that passes from a decedent shall be paid, before it is distributed, by the person who distributes the property.

"(2) The person who distributes property that passes from a decedent is liable for the inheritance tax on the property distributed until the tax is paid.

"(3) Unless a decedent specified a source for paying the inheritance tax and there is sufficient money from that source, the court may order sale of property to pay the inheritance tax on the property."

The statute now in effect inferentially acknowledges the importance of the testator's intent with respect to the source of funds to be used to pay various taxes relating to estates. In § 7–216(a)(1), there is a requirement that inheritance taxes be paid before distribution. When this requirement is read in conjunction with § 7–216(a)(3), which authorizes a court to order the sale of property in order to satisfy the tax if it is not paid by a *source specified by the decedent,* the importance of the testator's intent is clear. Accordingly, not only do our precedents support the power of testators to direct the source of funds for the payment of inheritance taxes, but the statutory scheme recognizes the same power by limiting the authority of courts to order the sale of other property (even when the taxes are not timely paid) so long as the source designated by the testator is sufficient to pay the taxes.

*right to direct that the tax be paid out of the residuary
estate.* In case he so directs, he thereby increases his gift
to the legatee to the extent of the tax, for he is providing for
the payment of an obligation which the legatee would have
been obliged to pay if the testator had not directed other-
wise...."

*Bouse,* 180 Md. at 685, 26 A.2d at 768–69 (citations omitted)
(emphasis added). Once again, we recognized the testator's
intent as paramount.

So, too, is *Smith v. State,* 134 Md. 473, 107 A. 255 (1919).
That case involved the exercise by the testatrix of a power of
testamentary appointment reserved to her when she executed
a deed of trust, declaring certain trusts. In the will executed
in the exercise of the reserved power, and a codicil executed
subsequently, the testatrix directed her executor to:

"[P]ay all collateral or other inheritance taxes out of my
estate, to the end that each legatee above named may
receive, free of any such tax the full amount of his or her
legacy hereinbefore given."

"[P]ay out of the residue of my estate any and all collateral,
inheritance, succession, or other like tax or taxes, federal,
state or municipal, upon each of the legacies given and
bequeathed both in this codicil and in my said will, to the
end that each legatee named may receive free of any tax the
full amount of his or her respective legacy."

134 Md. at 477, 107 A. at 256. The court below having passed
a decree requiring the payment of taxes on "estates, real,
personal and mixed, money, public and private securities for
money of every kind ... transferred by ... will," out of the
residuary estate, rejecting the argument made by the testa-
trix's executor that no taxes were payable or they were the
responsibility of the legacies, 134 Md. at 478, 107 A. at 257, the
executor appealed. This Court affirmed the decree. On the
issue of where the burden of the taxes fell, we said:

"The remaining question which was suggested by the argu-
ment was the fund from which the money was to be paid, if
the tax was valid. It is entirely clear what the intent of the

testatrix was from the quotation made already from her will and codicil. It is true that the decree appealed from might have been a little clearer in its phraseology, but that is a verbal matter only, and will occasion no practical difficulty in the conduct of the executors and trustees."

*Id.* at 480, 107 A. at 257–58.

 It is clear that the testamentary language used by the testator in the case at bar clearly expresses the testator's intent that any, and all, inheritance taxes were to be paid from the residuary estate and were not to be apportioned among, or deducted from, the shares of the individual residuary legatees. Necessarily, therefore, the testator must have intended that the amount of the residuary shares to be distributed would be determined based on the value of the residuary estate after the taxes had been paid, off the top, out of the estate; it was the clear intention of the testator that each individual share of the residuary estate be determined after the taxes were paid on the entire estate, albeit from the residuary estate. Thus, it is immaterial that under the Tax Code, some of the legatees would not have been obligated, in any event, to pay taxes on their share; they are, in reality, not being taxed on their residuary share, nor is any residuary legacy being reduced. As we have said, the intent of the testator, as ascertained from the language of the will, controls the source of the funds to be used to pay inheritance taxes so long as there is no conflict with the applicable statute, other law or public policy. *See Johnson,* 283 Md. at 648–49, 392 A.2d at 1106–07. There is no conflict in the case at bar. The testamentary language at issue clearly designates the fund from which the inheritance taxes due in this case were to be paid-from the residuary estate—and also when the payment is to be made—prior to apportionment among the residuary legatees.

To be sure, the will provision at issue *sub judice* is similar to the will provision at issue in *Johnson v. Hall;* they both reference various death taxes and duties, although the provision in the latter is broader, including, in addition to taxes, debts and expenses, and the intention of the testator that they

be paid, and, thus, the obligation of the personal representative with regard thereto. But they differ significantly, as well. The provision *sub judice* not only directs the payment of the taxes, it states how the payments are to be treated, "as an expense of the administration of my estate without apportionment." While the provision in *Johnson* also directs payment, it does so only with regard to the timing of the payment of the taxes. In *Johnson,* we characterized as "ritualistic" and "boiler plate," *id.* at 655, 392 A.2d at 1110, the will's reference to debts, expenses and taxes. The Orphans' Court's analysis gives that characterization a significance it does not have and that certainly was never intended. In so characterizing the reference, we simply stated that it was insufficient to express the intention attributed to the testatrix by the beneficiaries. The Court did not say, nor did it mean to suggest, that "boiler plate" language can never be sufficiently clear to express an intention of the testator contrary to the apportionment statute.

Cases from our sister jurisdictions generally are in accord. *In Matter of Estate of Cline,* 258 Kan. 196, 898 P.2d 643 (1995), the testator's will provided that:

> " 'All estate, inheritance, legacy, succession, excise or transfer taxes . . . with respect to all property taxable . . . by reason of my death . . . and whether such taxes be payable by my estate or by any recipient of any such property, shall be paid by my Executor out of my general estate as part of the expense of the administration thereof with no right of reimbursement from any recipient of any such property.' "

258 Kan. at 198, 898 P.2d at 645. The residuary legatees, claiming that the will under review was ambiguous, argued that the taxes on the residuary estate should be apportioned among the residuary legatees. The trial court declined to require apportionment. The Supreme Court of Kansas affirmed. Having framed the competing positions of the parties, it expressed the relevant principles of law, as follows:

> "The residuary beneficiaries contend that Cline's will is ambiguous because it does not clearly state an intention that

the entire estate and inheritance taxes be paid out of her residuary estate.... The Bank asserts that Article I of Cline' s will directing the payment ... from 'my general estate' was a clear and unambiguous expression of Cline's intent that the taxes be paid out of her residuary estate. "Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator. In the interpretation of wills, the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and not contrary to law or public policy.

 \* \* \* \* \* \*

"The language in Cline's will states an intention to exonerate all property passing as a result of Cline's death and that the taxes be paid out of her estate."

*Id.* at 199–207, 898 P.2d at 646–650 (citations omitted).

*In re Robbins' Estate,* 116 N.H. 248, 356 A.2d 679 (1976), addressed the question whether "the tax due the State of New Hampshire under RSA 86:6 [9] [is] to be paid as directed in Article Sixth of the will, or is it to be paid by receiving from each legatee and devisee an amount equal to the tax assessed upon each legacy and devise, pursuant to RSA 86:60." *Id.* at 248–49, 356 A.2d at 680. Article Sixth of the testator's will directed the testator's executor to "pay any and all inheritance taxes ... from the residue of my estate insofar as the same may be sufficient to pay the same." *Id.* at 249, 356 A.2d at 681. The court held "[t]he answer to the second question is that the taxes due the State of New Hampshire pursuant to RSA 86:6 are to be paid as directed in Article Sixth of the will." *In re Robbins' Estate,* 116 N.H. at 250, 356 A.2d at 682.

*In Matter of Estate of Morris,* 254 Mont. 368, 838 P.2d 402 (1992), "[t]he question before the Court [was] whether the will provide[d] a method of apportioning state inheritance taxes

---

**9.** R.S.A. 86:6 was New Hampshire's apportionment statute, its version of § 11–109, then in effect. It was repealed in 2002.

different from that set out in the statute." *Id.* at 404. To answer this question, it was necessary that the court determine if the trial court erred in holding that the testatrix's "testamentary intent, as expressed in [her] will was sufficiently clear so as to overcome the statutory directive as to apportionment of state inheritance taxes." *Id.* at 369–370, 838 P.2d 402. The applicable statute was § 72–16–603, MCA, which, as relevant, provided:

"(1) Except as provided in subsection (3) and unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are to be used for that purpose.

"(2) If the decedent's will directs a method of apportionment of tax different from the method described in this part, the method described in the will controls."

One paragraph of the testatrix's will stated:

"I direct my Personal Representative . . . to pay all of my just debts, my funeral expenses, the expenses of administering my estate, and all taxes both State and Federal which become payable by reason of my death, out of my estate."

The Montana Supreme concluded that this language, this direction, "is clearly sufficient," *id.*, to control the method of apportionment. *See also Matter of Estate of Keenan,* 519 N.W.2d 373, 378 (Iowa 1994) (holding that similar language was also sufficient to enforce the testator's intention to have inheritance taxes paid out of the general estate).

*In re Estate of Ross,* 815 A.2d 30 (Pa.Commw.Ct.2002), addressed whether there remained any estate after taxes to be passed on to the residuary legatees named in the will (the court noted that "[t]his case involves a dispute regarding the proper rate of Pennsylvania Inheritance Tax to be applied to a residuary estate."). *Id.* at 32. Addressing that issue, the court, after setting out the relevant portion of the will, i.e.,

" '*Provision of Taxes:* I direct that all ... inheritance ... taxes ... on the property passing under this my Will ... shall be paid out of the principal of my general estate to the same extent as if such taxes were expenses of administration and all ... devises and other gifts ... shall be free and clear thereof,' " observed, "[i]t is clear that Decedent made the decision that any taxes due were to be paid out of the residuary estate." *Id.* at 33.

A different Pennsylvania court reached a similar conclusion in a case where the relevant provision in the will provided that: "All ... taxes ... shall be paid out of the principal of my residuary Estate just as if they were my debts[.]" *In re Estate of Jones,* 796 A.2d 1003, 1004 (Pa.Super.Ct.2002) (bolding removed). Agreeing with the Orphans' Court that "the tax clause of [the testator's] Last Will and Testament controlled and required that all ... inheritance taxes be paid by the residuary estate," *id.* at 1005, the court held "that the tax clause in the Will was sufficiently clear and specific [enough] to overcome the statutory scheme for apportionment of estate and inheritance taxes." *Id.* at 1006. *See also Matter of Will of Herz,* 206 A.D.2d 283, 287, 614 N.Y.S.2d 514 (1994) (Kupferman, J. dissenting) "That inheritance taxes may be paid, as directed in the Will, out of the residuary estate, 'even where under the statute imposing the tax such tax would ordinarily be payable by the legatee out of the legacy received' is well established [.]" (quotations omitted).

The United States Tax Court has also construed similar testamentary language with respect to estate taxes in like fashion. In *Estate of Fine v. Commissioner of Internal Revenue,* 90 T.C. 1068, 1988 WL 50062 (1988), that court said:

"Absent a controlling Federal statute, State law determines what property will bear the burden of the Federal estate tax ... Virginia, like most other states, has enacted an apportionment statute, providing for the proration of estate tax liability among the beneficiaries of an estate in proportion to the relative values of the interests received.

\* \* \* \* \* \*

"Decedent's will expressly provides that estate and inheritance taxes are to be paid out of his residuary estate *without apportionment.* Consequently, the Virginia apportionment statute does not apply.

"The underlying principal in the construction of wills is that the intent of the testator, if it is legal and can be determined, must control."

*Id.* at 1072–73 (citations omitted).

## IV.

The clearly expressed intent of the testator, in the case *sub judice,* is that an inheritance taxes are to be paid by the residuary estate "without apportionment." Even if the language were "boiler-plate," it sufficiently expressed the testator's intention to require that inheritance taxes were to be paid from the residuary estate prior to apportionment. The fact that a statute imposes no tax burden on certain classes of residuary legatees is immaterial. Under the circumstances here present, the payment of inheritance taxes relating to appellant's residuary share is an additional gift to him from the testator, not an additional burden on the "exempt" legatees. On remand, the Orphans' Court shall direct that the inheritance taxes due are to be paid from the residuary estate prior to distribution to the residuary legatees.

JUDGMENT OF THE ORPHANS' COURT FOR MONTGOMERY COUNTY IS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.