Michelle Bandy et al. v. Alexandra Clancy, No. 93, Sept. Term, 2015 Opinion by Battaglia, J.

**Marital Deduction – Will Construction – Estate Taxes**

A second codicil, executed several years after a will, had the effect of qualifying a family trust, created from the residuary estate, for the marital deduction for federal estate tax purposes. A savings clause, also in the second codicil, restricted the personal representative from paying taxes on property allocated to the marital deduction to avoid diminution of the marital deduction. As a result, the family trust was exempt from liability for federal estate taxes.

Orphans' Court for Baltimore City
Estate No. 101962
Argued: June 1, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 93
September Term, 2015

MICHELLE BANDY et al.

v.

ALEXANDRA CLANCY

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A.
(Retired, Specially
Assigned),
JJ.

Opinion by Battaglia, J.
Barbera, C.J., Greene and McDonald, JJ.,
dissent

Filed: August 24, 2016

"The avoidance of taxes is the only intellectual pursuit that still carries any reward." – John Maynard Keynes

"The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."[1] – Justice George Sutherland

Acclaimed author Thomas L. Clancy, Jr., ("Decedent" and "Testator") died in October of 2013, survived by his second wife, Alexandra M. Clancy ("Mrs. Clancy") and a minor child by that marriage, as well as four adult children ("The Older Children") from Mr. Clancy's first marriage. Mr. Clancy died, leaving a will, as well as various amendments; the issue before us involves the interpretation of Mr. Clancy's Will, as amended by a Second Codicil, with respect to not only the payment of federal estate taxes, but also to the question of upon which beneficiaries the burden of such taxes should be placed at the time of Mr. Clancy's death.[2]

---

[1] *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 599 (1935).

[2] In their Petition for Certiorari, *Bandy v. Clancy*, 446 Md. 218, 130 A.3d 597 (2016), Mr. Clancy's adult children presented the following question:

> Did the Orphan's Court err in finding that a marital deduction savings clause in a codicil to Mr. Clancy's Will had the effect of overriding and eliminating the fundamental structure created by the Will?

Mr. Clancy's Personal Representative, J.W. Thompson Webb, also petitioned this Court for a Writ of Certiorari, which we granted, which stated:

> Did the Orphans' Court err in construing Mr. Clancy's will to require the personal representative to fund the family trust prior to the payment of estate taxes, such that the older children's trusts will bear the burden of all of the estate's federal and state estate taxes?

(continued . . .)

Federal estate taxes may be imposed on a decedent's real and personal property and any property interests[3] in excess of five million dollars, an amount adjusted annually since 2011 for the "cost of living",[4] 26 U.S.C. § 2010(c)(3); the threshold for the

(. . . continued)
Mrs. Clancy moved to dismiss the Personal Representative's petition on the basis that the Personal Representative had no standing. We need not resolve the issue as the certiorari question presented by the Older Children is the same.

[3] Only the issue of federal estate taxes is addressed, as the Maryland estate tax scheme tracks the federal such that the marital deduction is treated similarly. *See* Md. Code Tax Gen. § 7-302. Section 7-304 of the Tax General Article allows for an adjustment to the Maryland estate tax owed on an estate in excess of one million dollars by the value of property treated as qualified marital deduction terminable interest property. Md. Code Tax Gen. § 7-309(b)(5).

[4] Section 2010 of Title 26, which embodies the Internal Revenue Code, provides, in relevant part:

> (a) General rule.--A credit of the applicable credit amount shall be allowed to the estate of every decedent against the tax imposed by section 2001.
> * * *
> (c) Applicable credit amount.--
> * * *
> (3) Basic exclusion amount.--
> (A) In general.--For purposes of this subsection, the basic exclusion amount is $5,000,000.
> (B) Inflation adjustment.--In the case of any decedent dying in a calendar year after 2011, the dollar amount in subparagraph (A) shall be increased by an amount equal to--
> (i) such dollar amount, multiplied by
> (ii) the cost-of-living adjustment determined under section 1(f)(3) for such calendar year by substituting "calendar year 2010" for "calendar year 1992" in subparagraph (B) thereof.
> If any amount as adjusted under the preceding sentence is not a multiple of $10,000, such amount shall be rounded to the nearest multiple of $10,000.

26 U.S.C. 2010 (2013). All references hereinafter to Sections will be to Title 26, the Internal Revenue Code, in 2013, the year of Mr. Clancy's death.

imposition of Federal estate taxes in 2015 was $5,430,000.[5] Federal estate tax is

calculated on a graduated basis, on the value of the estate above the threshold, starting at

18% for the first ten thousand dollars.[6] Which beneficiaries, if any, are obligated to pay a

---

[5] Internal Revenue Service, www.irs.gov, https://www.irs.gov/businesses/small-businesses-self-employed/whats-new-estate-and-gift-tax (https://perma.cc/4WRH-PTKQ).

[6] The tax rate schedule for estates valued over the threshold is provided under Section 2001(c) of the Internal Revenue Code as:

| If the amount with respect to which the tentative tax to be computed is: | The tentative tax is: |
|---|---|
| Not over $10,000 | 18 percent of such amount. |
| Over $10,000 but not over $20,000 | $1,800, plus 20 percent of the excess of such amount over $10,000. |
| Over $20,000 but not over $40,000 | $3,800, plus 22 percent of the excess of such amount over $20,000. |
| Over $40,000 but not over $60,000 | $8,200, plus 24 percent of the excess of such amount over $40,000. |
| Over $60,000 but not over $80,000 | $13,000, plus 26 percent of the excess of such amount over $60,000. |
| Over $80,000 but not over $100,000 | $18,200, plus 28 percent of the excess of such amount over $80,000. |
| Over $100,000 but not over $150,000 | $23,800, plus 30 percent of the excess of such amount over $100,000. |
| Over $150,000 but not over $250,000 | $38,800, plus 32 percent of the excess of such amount over $150,000. |
| Over $250,000 but not over $500,000 | $70,800, plus 34 percent of the excess of such amount over $250,000. |
| Over $500,000 but not over $750,000 | $155,800, plus 37 percent of the excess of such amount over $500,000. |
| Over $750,000 but not over $1,000,000 | $248,300, plus 39 percent of the excess of such amount over $750,000. |
| Over $1,000,000 | $345,800, plus 40 percent of the excess of such amount over $1,000,000. |

portion or all of the federal estate taxes is a matter of State law, *Riggs v. Del Drago* et al., 317 U.S. 95, 97–98, 63 S.Ct. 109, 110, 87 L.Ed. 106, 110–11 (1942), and, in Maryland, may be provided for under the Will.[7] Md. Code Tax Gen. § 7-308(k).

Deductions available to reduce the federal estate tax burden include expenses and indebtedness,[8] certain uncompensated losses,[9] transfers of property for public, charitable and religious uses[10] and the marital deduction,[11] all of which reduce the taxable estate by the value of the property allocated to the deduction.[12] With respect to the marital deduction, Congress in 1948 enacted a mechanism to reduce taxes on property transferred upon death to a surviving spouse. Revenue Act of 1948, Pub. L. No. 80-471, 62 Stat. 110, 117 (1948). At its inception, the marital deduction essentially excluded the <u>lesser</u> of the value of property transferred to the surviving spouse from the taxable estate or one half of the adjusted gross estate.[13] Changes to the computation of the marital deduction occurred over the years but the most significant for our purposes occurred in 1981 through the

---

[7] In Maryland, when the will does not direct for the payment of federal estate taxes, the allocation of liability is determined statutorily under Section 7-308 of the Tax General Article of the Maryland Code, the Uniform Estate Tax Apportionment Act.

[8] *See* 26 U.S.C. § 2053.

[9] Section 2054 of Title 26 provides:
> For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise.

[10] *See* 26 U.S.C. § 2055.

[11] *See* 26 U.S.C. § 2056.

[12] The Maryland marital deduction tracks that of the Federal estate tax marital deduction. Md. Code Tax Gen. § 7-309(b)(5).

[13] *See* Revenue Act of 1948, Pub. L. No. 80-471, 62 Stat. 110, 117 (1948).

Economic Recovery Tax Act, under which the marital deduction was increased by enabling the total value of an estate to be transferred to a surviving spouse without adverse federal estate tax consequences. Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172 (1981). *See also* George M. Schain, *Marital Trust v. QTIP: Advice for Estate Planners*, 49 Mo. L. Rev. 741 (1984).

Essentially, then, an estate can avoid adverse tax consequences upon the death of the testator through the use of the marital deduction, because the marital deduction "reflects a strongly held policy that it is inappropriate to assess transfer taxes on transfers of property between spouses." William M. McGovern, et al., *Wills, Trusts and Estates Including Taxation and Future Interests* 719 (4th ed. 2010). Federal estate taxes may be reduced when property is transferred to the surviving spouse upon the death of the decedent, but the value of the property conveyed that remains at the time of the death of the surviving spouse is subject to federal estate tax.[14] 26 U.S.C. § 2044. *See also* Angela M. Vallario, *The Fundamentals of Estate Planning* 251 (2012).

---

[14] Section 2044, "Certain property for which marital deduction was previously allowed", provides:

> (a) General rule.--The value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying income interest for life.

> (b) Property to which this section applies.--This section applies to any property if--
>> (1) a deduction was allowed with respect to the transfer of such property to the decedent--
>>> (A) under section 2056 by reason of subsection (b)(7) thereof, or
>>> (B) under section 2523 by reason of subsection (f) thereof, and

(continued . . .)

To qualify for the marital deduction, the property must be that which would have been includable in the gross estate of the decedent and which passes, or has passed, to the surviving spouse by operation of law or otherwise.[15] 26 U.S.C. § 2056(a). "Terminable" property interests, interests given to a surviving spouse for a limited time, however, do not qualify for the marital deduction, unless the interest qualifies as one of the exceptions provided in Section 2056 of the Internal Revenue Code,[16] including the Qualified Terminable Interest Property (QTIP), 26 U.S.C. § 2056(b)(7), or that property:

(I) which passes from the decedent,
(II) in which the surviving spouse has a qualifying income interest for life, and
(III) to which an election[17] under this paragraph applies.

---

(. . . continued)

(2) section 2519 (relating to dispositions of certain life estates) did not apply with respect to a disposition by the decedent of part or all of such property.

(c) Property treated as having passed from decedent.--For purposes of this chapter and chapter 13, property includible in the gross estate of the decedent under subsection (a) shall be treated as property passing from the decedent.

[15] Section 2056(a), "Bequests, etc., to surviving spouse", provides:

For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

[16] Certain exceptions to the exclusion of terminable interests from the marital deduction are provided under Section 2056, and include a life estate with the power of appointment in the surviving spouse, life insurance or annuity payments made to the surviving spouse who also has the power of appointment, and qualified terminable interest property (QTIPs). 26 U.S.C. § 2056(b)(5)–(7).

[17] Property must be elected for treatment as QTIP property on the Federal tax return for the estate, "**(v) Election.--**An election under this paragraph with respect to any property

(continued . . .)

6

26 U.S.C. § 2056(b)(7)(B)(i). To constitute a "qualifying income interest for life" the terms of the property transfer must provide that:

> (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct[18] interest for life in the property, and

> (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

> > Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

26 U.S.C. § 2056(b)(7)(B)(ii). Treatment of property as QTIP property requires that the executor elect the property for treatment as QTIP property on the federal tax return for the estate, a decision that is irrevocable. 26 U.S.C. § 2056(b)(7)(B)(v).

Property elected for QTIP treatment may qualify for the marital deduction, whether it is transferred outright or placed in a trust. Tax Reg. § 20.2056(a)-1. A properly structured QTIP trust, one that meets the requirements of Section 2056(b)(7)(B), qualifies the property in trust for inclusion in the marital deduction, yet allows the testator to specify a different beneficiary for the remainder of the QTIP trust assets upon the death of the surviving spouse. 26 U.S.C § 2056(b)(7)(B)(i)-(ii). *See also* Vallario, *supra*, at 261.

---

(. . . continued)
shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable." 26 U.S.C. § 2056(b)(7)(B)(v)

[18] Usufruct is defined as having "the legal right of using and enjoying the fruits or profits of something belonging to another." Merriam-Webster, http://www.merriam-webster.com/dictionary/usufruct (https://perma.cc/942S-X4NM).

The QTIP Trust qualifies for the marital deduction when the surviving spouse is entitled to all of the income of the trust for life, the income is paid to the surviving spouse at least annually and no one has the power to appoint any part of the property to any person other than the surviving spouse.

In addition, unlike a traditional life estate, the surviving spouse, who is the beneficiary of a QTIP Trust, not only receives the income from the Trust but also may request that the trustee disburse principal from the Trust to meet the surviving spouse's needs.[19] Tax Reg. § 20.2056(b)-7(d)(6). It is possible, therefore, that distributions of principal for the benefit of the surviving spouse could have depleted the Trust such that only minimal assets are left for the remainderman identified by the testator.[20]

---

[19] Section 20.2056(b)-7 of Title 26 of the Treasury Regulation provides the trustee with the power to distribute principal to the surviving spouse:

> An income interest in a trust will not fail to constitute a qualifying income interest for life solely because the trustee has a power to distribute principal to or for the benefit of the surviving spouse. The fact that property distributed to a surviving spouse may be transferred by the spouse to another person does not result in a failure to satisfy the requirement of section 2056(b)(7)(B)(ii)(II). However, if the surviving spouse is legally bound to transfer the distributed property to another person without full and adequate consideration in money or money's worth, the requirement of section 2056(b)(7)(B)(ii)(II) is not satisfied.

Tax Reg. § 20.2056(b)–7(d)(6).

[20] Similarly, the spouse may invade principal if given the power of withdrawal over the QTIP principal when the trust was created although such power of withdrawal, when given, is limited to the greater of $5,000 or five percent of the trust. 26 U.S.C. §§ 2514(e), 2041(b)(2). Section 2514 of Title 26 entitled Powers of Appointment provides:

> The lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. The rule of the preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the

(continued . . .)

8

Any property used to pay federal estate taxes, however, will not qualify for the marital deduction. 26 U.S.C. § 2056(b)(4)(A). If property allocated to the marital deduction is used to pay federal estate tax, the marital deduction is reduced by the amount of the payment made, thereby increasing the federal estate tax imposed on the estate. *Id. See also* Jerome A. Manning, Manning on Estate Planning 14-18 (7th ed. 2015).

One way to protect the marital deduction from adverse tax consequences and receive the full federal estate tax benefit for property transferred to the surviving spouse is to use a "savings clause" in the will. That type of savings clause, often referred to as an "interpretive aide savings clause", restricts actions taken by the personal representative that could reduce the tax benefit of the marital deduction and assists with the interpretation and explanation of the testator's intent with respect to preventing adverse tax consequences. *See* Eugene Lyle Stoler, *Savings Clauses*, The CPA Journal, 25 (April 1999); Charles A. Redd, *What Types of Savings Clauses will Preserve the Marital Deduction?*, 14 Est. Plan. 72 (1987). The interpretive aide savings clause "attempts to elucidate the testator's or grantor's prevailing intentions with regard to securing the marital deduction," Redd at 72, and is "a provision that takes away a power or changes a

---

(. . . continued)
> property which could have been appointed by exercise of such lapsed powers exceeds in value the greater of the following amounts:
> (1) $5,000, or
> (2) 5 percent of the aggregate value of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could be satisfied.

26 U.S.C. § 2514(e). Identical language is contained in Section 2041(b)(2) of the Internal Revenue Code, Powers of Appointment.

provision that is expressly given elsewhere in the instrument and is, therefore, in direct conflict with that other express power or provision." Stoler at 25; *see also* William Parsons, *Lifetime and Testamentary Estate Planning*, 74 (9th ed. 1983). The interpretive aide savings clause, therefore, can express the testator's intent that any authority granted to the personal representative is void should it reduce the efficacy of the marital deduction.

The Internal Revenue Service has recognized the validity of an interpretive aide savings clause in Rev. Rul. 75-440 (1975). Addressed in Revenue Ruling 75-440 was a situation in which a will provided for both a marital trust and a residuary trust and granted authority to the trustees to invest trust principal in non-income producing life insurance. The will also included a savings clause that stated:

> Notwithstanding anything herein contained to the contrary, any power, duty, or discretionary authority granted to my Fiduciary hereunder shall be absolutely void to the extent that either the right to exercise or the exercise thereof, shall in any way affect, jeopardize or cause my estate to lose all or any part of the tax benefit afforded my estate by the Marital Deduction under either Federal or State Laws.

*Id.* at 2. Since life insurance policies are not income producing property and often require that premiums be paid, a beneficiary of a marital trust that owned such property would not be entitled to all of the income, thereby eviscerating the marital deduction. *Id.* The trusts in question permitted such investment, and the question was whether that permission applied to the marital trust and, therefore, disqualified it from inclusion in the marital deduction. The Revenue Ruling concluded, however, that the interpretive aide savings clause in the will was helpful to interpret the testator's intent not to authorize the

10

trustees to invest marital trust assets in non-income producing life insurance in order to qualify for the marital deduction:

> The savings clause is not a savings clause in the strict sense of the term, but is an aid in determining the testator's intent; that is, the existence of a savings clause that would 'void' a disqualifying power given to the trustees of the marital deduction trust is relevant here only because it helps indicate the testator's intent not to give those trustees a disqualifying power.

*Id.* at 3. As a result, the marital deduction under Section 2056 was allowed with respect to the marital trust.[21]

Mr. Clancy's Will, executed June 11, 2007, contained fourteen items that named his personal representative, instructed with respect to the payment of estate taxes, left Mr. Clancy's personal and real property to Mrs. Clancy and, with respect to the remainder of his estate, created three residuary trusts: a Marital Trust for the benefit of Mrs. Clancy representing one third of the residuary; a Family Trust for the benefit of Mrs. Clancy and their minor child equal to one half of the residue that remained after the creation of the

---

[21] One commenter on savings clauses has noted:

> Although the IRS has adopted an adverse posture towards savings clauses and will review them carefully, taxpayers will have the most difficulty with those clauses that include a condition subsequent and attempt to revoke a transfer, alter a completed transaction, or are connected with a determination of value. Alternatively, clauses that serve to assist in interpretation of a document, or explain the parties' intention, will generally be more acceptable. However, even though savings clauses may not always be deemed valid, they are recommended because they cannot hurt and in fact may save the day if and when unexpected qualification issues arise.

Eugene Lyle Stoler, *Savings Clauses*, The CPA Journal, 27 (April 1999).

Marital Trust; and the final, two Older Children's Trusts into which the remaining one half of the residue after the creation of the Marital Trust was to be deposited.[22]

ITEM THIRD
A. All estate, inheritance, legacy, succession and transfer taxes (including any interest and any penalties thereon) lawfully payable with respect to all property includible in my gross estate or taxable in consequence of my death . . . shall be paid by my Personal Representative out of my residuary estate, subject, however, to the provisions hereinafter contained in Item SIXTH hereof with respect to the Marital Share therein created . . . .

ITEM FOURTH
A. I give and bequeath to my Wife, if she survives me for thirty days, all of my tangible personal property of domestic or personal use.

\* \* \*

ITEM FIFTH
A. I give and devise to my Wife, if she survives me for thirty days, all of my right, title, and interest in and to my real property in Calvert County, Maryland, known as Peregrine Cliff, which includes my residence and all contiguous parcels of land, whether improved or unimproved, . . .

B. I give and devise to my Wife, if she survives me for thirty days, all of my right, title, and interest in and to my real property on Martha's Vineyard, Dukes County, Massachussetts . . .

ITEM SIXTH
I give, bequeath, and devise all of the rest and residue of my estate, real and personal, and wheresoever situate (hereinafter referred to as my "residuary estate"), including all property over which I may have any power of appointment, as follows:

A. If my Wife survives me, there shall first be set apart and promptly transferred as set out below a separate fund (hereinafter sometimes referred to as the Marital Share) equal to one-third of my net estate, as calculated

---

[22] The two trusts to which we shall refer in the singular as the Older Children's Trust include the "Exempt Residuary Trust", equal to the allowable credit under Section 2010 of Title 26 of the United States Code, and the "Non-Exempt Older Children's Trust", equal to the balance of the residuary after funding the Exempt Residuary Trust.

pursuant to Section 3-203(c) of the Estates and Trusts Article of the Annotated Code of Maryland.

1. . . .

2. No asset or proceeds of any asset shall be included in the Marital Share as to which a marital deduction would not be allowable if included.

3. The Marital Share shall not be charged with or reduced by any estate, inheritance, succession or other tax of any kind or nature assessed by any State or under the laws of the United States or by any other taxing authority whatsoever.

. . .

8. The Marital Share shall be paid over and transferred to and held by my trustee or trustees, hereinafter named and sometimes, for convenience, referred to in the singular neuter, as a separate trust, called the "Marital Trust," which shall be administered as set out below in Item SEVENTH.

B. I direct that one-half of the remainder of my residuary estate shall be paid over and distributed to my trustee as a separate trust, called the "Non-Exempt Family Residuary Trust," which shall be administered as set our below in Item EIGHTH.

C. I direct that the other one-half of the remainder of my residuary estate shall be administered as follows:

1. I direct that an amount equal to the applicable credit amount allowed to my Estate pursuant to Section 2010 of the Internal Revenue Code of 1986, as amended ("IRC"), shall be paid over and distributed to my trustee as a separate trust, called the "Exempt Residuary Trust," which shall be administered as set out below in Item NINTH.

2. I direct that the balance of my residuary estate, after funding the Exempt Residuary Trust, shall be paid over and distributed to my trustee as a separate trust, called the "Non-Exempt Older Children's Residuary Trust," which shall be administered as set out below in Item TENTH.

* * *

ITEM EIGHTH

A. My trustee shall pay over the entire net income from the Non-Exempt Family Residuary Trust to my Wife, at least quarter-annually, during her lifetime.

B. Upon the exhaustion of the Marital Trust, my trustee shall have full power, in its discretion, to pay to or apply for the benefit of my Wife or my

child or children by my Wife who are living from time to time, out of the principal of the Non-Exempt Family Residuary Trust, such amounts and in such proportions as my trustee, in its absolute discretion, from time to time may deem advisable and proper to provide for her or their continued maintenance, support, health, and education (including secondary, college, postgraduate, professional or other education).

C. In determining whether, when, and for whom any such payments pursuant to Paragraph B hereof shall be made, and the amounts thereof, if any, my trustee is hereby requested to take into consideration the respective needs and best interests of the beneficiaries without any duty or obligation with respect to my children to pay over equal amounts to or for all of them. Nevertheless, the decisions of my trustee shall be final and binding on all parties.

D. Upon the death of my Wife, or upon her remarriage, whichever event shall first occur, my trustee shall divide the then remainder of the Non-Exempt Family Residuary Trust, if any, together with all additions from the Marital Trust, both principal and undistributed net income, into a sufficient number of equal shares, if more than one, so that there shall be set apart one share for each of my children by my Wife who are then living and one such share for the descendants (as a group) of each of my children by my Wife who are not then living, but of whom there shall be one or more then living descendants.

. . .

Mr. Clancy also included a "Savings Clause" in ITEM TWELVETH of his Will, directing that no "payment or distribution by my personal representative or trustee" should be made that would "in any way prevent my estate from receiving the benefit of the marital deduction":

ITEM TWELVETH
D. Anything in this Will to the contrary notwithstanding, and whether or not any reference is made in any other provision of this Will to the limitations imposed by this Paragraph D, neither my personal representative nor my trustee shall have or exercise any authority, power, or discretion over the Marital Share, or the income thereof, or the property constituting the Marital Share, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this

14

Will that would in any way prevent my estate from receiving the benefit of the marital deduction as hereinbefore set forth.

On September 18, 2007, Mr. Clancy executed a codicil ("First Codicil") that amended the Older Children's Trust to include the value of any gifts made to any of the Older Children during Mr. Clancy's lifetime.[23] Six years later, however, on July 25, 2013, Mr. Clancy executed a second codicil ("Second Codicil"), the subject of our review, which contained a series of amendments to the Family Trust as well as explicitly included the Family Trust in the "Savings Clause" designed to protect the benefit of the marital deduction.[24] The Second Codicil made the following amendments to ITEM EIGHTH:

> . . . I amend Paragraph B of ITEM EIGHTH of my Will by deleting therefrom the words "or my child or children by my Wife who are living from time to time," and the words "or their" and otherwise leaving said paragraph unchanged.
>
> I amend Paragraph C of ITEM EIGHTH of my Will by deleting its text in its entirety and inserting in place thereof "[Intentionally omitted.]"
>
> I amend Paragraph D of ITEM EIGHTH of my Will by deleting therefrom the words "or upon her remarriage, whichever event shall first occur," and otherwise leaving said paragraph unchanged.

Which resulted in the reading of ITEM EIGHTH as follows:

> ITEM EIGHTH
> A. My trustee shall pay over the entire net income from the Non-Exempt Family Residuary Trust to my Wife, at least quarter-annually, during her lifetime.

---

[23] The First Codicil executed in September of 2007 is not in issue in the present case.
[24] The Second Codicil also amended ITEM FOURTEENTH to reinstate J. W. Thompson Webb as Mr. Clancy's Personal Representative.

B. Upon the exhaustion of the Marital Trust, my trustee shall have full power, in its discretion, to pay to or apply for the benefit of my Wife, out of the principal of the Non-Exempt Family Residuary Trust, such amounts and in such proportions as my trustee, in its absolute discretion, from time to time may deem advisable and proper to provide for her continued maintenance, support, health, and education (including secondary, college, postgraduate, professional or other education).

C. Intentionally omitted.

D. Upon the death of my Wife my trustee shall divide the then remainder of the Non-Exempt Family Residuary Trust, if any, together with all additions from the Marital Trust, both principal and undistributed net income, into a sufficient number of equal shares, if more than one, so that there shall be set apart one share for each of my children by my Wife who are then living and one such share for the descendants (as a group) of each of my children by my Wife who are not then living, but of whom there shall be one or more then living descendants.
. . .

The Second Codicil also made additions to Paragraph D of Item Twelveth,

deleting the former text in its entirety and replacing it with the following:

> D. *No asset or proceeds of any assets shall be included in the Marital Share or the Non-Exempt Family Residuary Trust as to which a marital deduction would not be allowed if included.* Anything in this Will to the contrary notwithstanding, and whether or not any reference is made in any other provision of this Will to the limitations imposed by this Paragraph D, neither my personal representative nor my trustee shall have or exercise any authority, power or discretion over the Marital Share *or the Non-Exempt Family Residuary Trust or the income thereof, or the property constituting the Marital Share or the Non-Exempt Family Residuary Trust*, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will, such that, in any such event, my estate would be prevented from receiving the benefit of the marital deduction as hereinbefore set forth. *My Wife shall have the power at any time by written direction to compel my trustee to convert unproductive property held in the Marital Trust into income producing property. Likewise, my Wife shall have the power at any time by written direction to compel my trustee to convert unproductive*

> *property held in the Non-Exempt Family Residuary Trust into income*
> *producing property.*

(emphasis added).

After Mr. Clancy's death on October 1st, his Will was submitted along with the First and Second Codicils for probate in Baltimore City. In September of 2014, Mrs. Clancy petitioned in the Orphans' Court for a Declaratory Judgment in which she sought a determination that the Family Trust was not obligated to pay any estate taxes.[25] A hearing as to the construction and interpretation of the Will and the Second Codicil was held in December of 2014 before Chief Judge Lewyn Scott Garrett of the Orphans' Court.

Judge Garrett, thereafter, issued a Memorandum and Order in which he determined that the resolution of the issue was dependent upon whether the Savings Clause in ITEM TWELVETH, as amended by the Second Codicil, prohibited the personal representative from requiring that the Family Trust contribute to the payment of estate taxes. Judge Garrett determined that the Savings Clause in the Will, as amended by the Second Codicil, constituted a "valid interpretive aid savings clause":

> In my view, the Savings Clause is a valid interpretive aid savings clause.
> The Savings Clause is applicable to the entire will and is not dependent on
> a court ruling or IRS determination. Instead, it is a clear expression of the
> testator's intent to have the Family Trust qualify for the marital deduction.

He noted that, generally, there are two types of savings clauses designed to preserve the marital deduction, (1) "condition subsequent" savings clauses; and (2) "interpretive aid"

---

[25] Mrs. Clancy also sought to have the personal representative removed.

17

savings clauses, and that an interpretive aid savings clause was "designed to stand on its own with the purpose of clarifying the testator's intent in the event of a perceived ambiguity or contradiction."

Judge Garrett concluded, as a result of the singular focus of the Second Codicil on qualifying the Family Trust for the marital deduction, that the Savings Clause reflected Mr. Clancy's predominant intent that the Family Trust be free of any Federal estate tax liability:

> In exercise of our jurisdiction to construe a will, incidental to the administration of the Estate, this Court finds that the Will restricts the [Personal Representative] from requiring the Family Trust to contribute to the payment of estate taxes. Although the Tax Clause and division of the residuary trusts provide some evidence that the Testator intended the Family Trust to share in the estate tax liability with the Older Children's Trust, this Court finds the express language of the Savings Clause as the clearest and the predominant evidence of the Testator's intent, which can only be achieved if the Family Trust is free of estate tax liability. This court also finds that the plain language of the Savings Clause, which prevents the [Personal Representative] from taking any action that would prevent the Family Trust from receiving the benefit of the marital deduction, necessarily includes restricting the payment of estate taxes as each payment of estate tax causes a recalculation of the estate tax and a loss of the marital deduction. . . . Furthermore, this court finds that the overwhelming purpose of the Second Codicil is to qualify the Family Trust for the marital deduction and reduce the overall estate tax liability. This Court is also bound by the rule, where if there is a conflict between a will and a codicil, "the codicil as the last expression of the testator's will and intention must be given effect." *Wiesenfeld v. Rosenfeld*, 170 Md. 63, 71 (1936).

We review the Orphans' Court's conclusions of law under a *de novo* standard. *Pfeufer v. Cyphers*, 397 Md. 643, 648, 919 A.2d 641, 644-45 (2007). When construing a will, our emphasis, as well as that of the Orphans' Court, is ascertaining and effectuating the intent of the testator:

> When construing a will, the "paramount concern of the court is to ascertain and effectuate the testator's expressed intent." In other words, the search is not for the testator's "presumed [intention] but for his *expressed intention.*" Generally, that intent is "gathered from the four corners of the will with the words of the will given their 'plain meaning and import.' " Words having legal significance, however, "will be construed in that sense unless the will clearly indicates otherwise."

*Id.* at 649, 919 A.2d at 645 (internal citations omitted).

Mr. Clancy's Older Children assert that their father intended that federal estate taxes should be paid out of the residuary estate, including that which was allocated to the Family Trust, when he executed his Will, because ITEM THIRD of the Will directed that, "All estate, inheritance, legacy, succession and transfer taxes . . . shall be paid by my personal representative out of my residuary estate[.]" They argue that federal estate taxes can be paid out of the Family Trust and still preserve the property allocated to that trust for the marital deduction.

Mrs. Clancy does not dispute that ITEM THIRD of the Will says what it says, but asserts that the Savings Clause expressly excepts any property from the residuary estate allocated to the marital deduction from having to bear the burden of estate taxes.

The parties' disagreement, then, centers on the impact of the Second Codicil's qualification of the Family Trust for the marital deduction and, moreover, the interpretation of the restrictions in the Savings Clause as amended by the Second Codicil, juxtaposed against ITEM THIRD of the Will, which indicated that federal estate taxes are to be paid from the residuary estate.

When construing a will and any codicils, "[t]he will and codicils must be construed as one instrument, and effect must, if possible, be given to every part of them."

*Lederer v. Safe Deposit & Trust Co. of Baltimore*, 182 Md. 422, 428, 35 A.2d 166, 169 (1943); *Hutton v. Safe Deposit & Trust Co. of Baltimore*, 150 Md. 539, 551, 133 A. 308, 312 (1926) ("The general rule of construction requires us to give a meaning and purpose to every part of the will and codicil."). "It is a settled rule of construction that a will and its codicils must be interpreted as one instrument, and the provisions of the will are to be given effect except to the extent only to which they are revoked by the codicils, either in terms or by clear inconsistency between the earlier and later expressions of the testator's intention." *Associated Professors of Loyola College of City of Baltimore v. Dugan*, 137 Md. 545, 552, 113 A. 81, 84 (1921).

The Older Children and Mrs. Clancy, as well as the personal representative, all agree that the Second Codicil qualified the Family Trust for the QTIP election, because Mrs. Clancy became the income beneficiary of the Family Trust for life; she could not transfer her income nor was she given a limited power of appointment, but she could request that the trustee invade the corpus of the trust for her needs, which would reduce the value of the Family Trust passing upon her death. All the parties also agree that the Second Codicil contained a Savings Clause that amended the Savings Clause in the Will to restrict the actions of the personal representative and trustee to qualify the portion of the residuary trust allocated to the Family Trust for the marital deduction.

The Second Codicil did not, however, specifically address, in any way, the Will provision that instructed that taxes were to be paid out of the residuary estate of which the Family Trust was a part.

To resolve the ambiguity and apparent conflict, we rely on the interpretive aide of the Savings Clause to elucidate Mr. Clancy's intent. In so doing, we determine, as did the Orphans' Court, that the Savings Clause contained in the Second Codicil which prevented the personal representative from exercising any "authority, power, or discretion" to disqualify any portion of the Family Trust from the marital deduction, such as the payment of federal estate taxes, "trumps" ITEM THIRD of the Will relating to payment of taxes from the residuary estate. We reach this conclusion for a number of reasons, the first of which is because of the decisions in similar circumstances by other courts, as well as the Internal Revenue Service's decision in Revenue Ruling 75-440.

In *Northeastern Pennsylvania Nat. Bank & Trust Co. v. U.S.*, 360 F.Supp 116 (M.D.Pa. 1973), the federal district court judge determined that a marital trust created by the will was not intended to bear the burden of any estate taxes based on a savings clause in the will which intended to retain the "maximum marital deduction." The will provisions in issue provided:

> (1) that the inheritance and estate taxes are to be paid from the residuary estate; (2) that the residuary estate is to be held in trust for decedent's wife, son and grandchildren, with 50% of the residue to be placed in the trust for his wife, 25% for his son and 25% for his grandchildren; and (3) that notwithstanding any other provision of the will, the Executor shall not have any duties or authority if or to the extent that such would disqualify the wife's trust from the maximum marital deduction.

*Id.* at 117. The will's savings clause stated:

> I provide and direct that notwithstanding any other provisions contained herein, ...
>
> (b) That the Executor and trustee shall not have any rights, powers, privileges, duties, authority, immunities, or discretion, given by any other

21

provision of this, my Last Will and Testament, if or to the extent that such would disqualify Trust A [the Marital Trust] for the maximum marital deduction."

*Id.* at 119. The Internal Revenue Service had assessed a deficiency because of the exclusion under the marital deduction of property conveyed to the spouse. The Commissioner of the Internal Revenue Service contended that the testator intended that the residue be split between trusts for his spouse, son and grandchildren after the payment of the estate taxes. *Id.* At 118. The federal district court judge disagreed and in language equally applicable to the instant case stated:

> If the executor were to charge the taxes generally to the residue, the wife's share in residue would bear a portion of the taxes which would disqualify it from the maximum marital deduction. Such payment of taxes from the residue would be in direct conflict with ¶ VIIIA3(b), and the testator has directed that in such an event ¶ VIIIA3(b) prevails. Likewise, if the ratio of 2:1:1 of the minimum monthly payments were interpreted to require the executor to set up corpora in a ratio of 2:1:1 by charging the death taxes generally to residue before computing the distributive shares, the conflicting direction to obtain the maximum deduction for the marital trust would take precedence.

> The direction to obtain the maximum marital deduction is the clearest and the predominant evidence of Rodgers' intent. His primary objective can be achieved here only if the wife's residuary share is free of federal estate tax.

*Id.* at 119.

Our determination that the Savings Clause in the Second Codicil clarifies Mr. Clancy's intention that the Family Trust not be charged with any federal estate taxes also is supported by Revenue Ruling 75-440, *supra*. In that case, the Service concluded that its savings clause that provided that, "Notwithstanding anything herein contained to the contrary, any power, duty, or discretionary authority granted to my Fiduciary hereunder

shall be absolutely void to the extent that either the right to exercise or the exercise thereof, shall in any way affect, jeopardize or cause my estate to lose all or any part of the tax benefit afforded my estate by the Marital Deduction under either Federal or State Laws.", Rev. Rul. 75-440 at 2, operated to void any power given to the trustees that would disqualify the marital deduction. *Id.* at 3. The savings clause, as interpreted by the Service, permitted it to displace the provision of the will that had directed estate taxes to be paid from the residuary estate of which the marital property qualifying for the deduction was a part.

Were the Family Trust in the instant case to bear the burden of any portion of the payment of the federal estate tax, that payment would reduce the marital deduction as noted in the tax regulation:[26]

> In the determination of the value of any property interest which passed from the decedent to his surviving spouse, there must be taken into account the effect which the Federal estate tax, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of the property interest.

---

[26] Section 20.2056(b)-4 of Title 26 of the Treasury Regulation, Marital Deduction; valuation of interest passing to surviving spouse, provides a discussion of the reduction in the value of the marital deduction by the amount of any estate tax paid:
> If the decedent bequeaths his residuary estate, or a portion of it, to his surviving spouse, and his will contains a direction that all death taxes shall be payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, is based upon the amount of the residue as reduced pursuant to such direction, if the residuary estate, or a portion of it, is bequeathed to the surviving spouse, and by the local law the Federal estate tax is payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, may not exceed its value as reduced by the Federal estate tax.

Tax Reg. § 20.2056(b)-4(c)(4).

Tax Reg. § 20.2056(b)-4(c)(1). The Regulation itself indicates the effect on the benefit

from payment of estate taxes out of property allocated to the marital deduction:

> For example, assume that the only bequest to the surviving spouse is $100,000 and the spouse is required to pay a State inheritance tax in the amount of $1,500. If no other death taxes affect the net value of the bequest, the value, for the purpose of the marital deduction, is $98,500.

Tax Reg. § 20.2056(b)-4(c)(2).

The Savings Clause in the Second Codicil, nevertheless, <u>explicitly</u> directs that the

personal representative not act to adversely impact the benefit of the marital deduction of

the Marital Trust <u>and</u> the Family Trust. To burden the Family Trust with payment of

federal estate taxes at the time of Mr. Clancy's death when the property is conveyed in

trust for the benefit of Mrs. Clancy would be in direct derogation of Mr. Clancy's intent

manifested in the Savings Clause.

The Older Children, however, rely on *Estate of James A. Fine v. C.I.R.*, 90 T.C.

1068 (1988), to bolster their argument that a savings clause does not necessarily avoid

payment of federal estate taxes from the marital share. In *Fine*, the testator died leaving a

will that directed in Articles One and Two the prompt payment of "debts and funeral

expenses" and the payment of estate taxes out of the residuary estate "without

apportionment." 90 T.C. at 1070. Article Three of the will directed that one-half of the

residuary was to go to the testator's surviving wife and the remainder of the residuary

divided into three equal shares to other beneficiaries. *Id.* Subsection 17 of Article IV

stated, "Any power, duty or discretionary authority granted to the Executor shall be void

to the extent that its exercise shall cause my estate to lose all or any part of the tax benefit

afforded by the marital deduction under federal or state laws." *Id.* The wife had argued that the marital share should not be burdened by the payment of federal estate tax which would reduce the benefit of the marital deduction.

The court concluded that the testator's will expressly provided that estate taxes were to be paid out of the residuary estate, without reference to the Virginia apportionment statute which would have maximized the marital deduction and limited payment of estate taxes by the marital share. 90 T.C. at 1075. The court also concluded that the limitation of the personal representative's discretion contained as a part of Article IV did not affect the payment of estate taxes because the Virginia apportionment statute was inapplicable pursuant to the terms of the will. *Id.*

*Fine*, however, is unavailing in the instant case because Mr. Clancy in the Second Codicil's Savings Clause <u>expressly</u> prohibited his Personal Representative from adversely affecting ability of the Family Trust to benefit from the martial deduction, when it stated "nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will, such that, in any such event, my estate would be prevented from receiving the benefit of the marital deduction as hereinbefore set forth." The Savings Clause also expressly applied to Mr. Clancy's Will in its entirety when in the second sentence of the Savings Clause it specified that "*Anything in this Will* to the contrary notwithstanding, and whether or not any reference is made in *any other provision* of this Will . . . ." (emphasis added). The restriction on the power granted to Mr. Clancy's Personal Representative contained in the Second Codicil

Savings Clause applies to <u>all</u> provisions of the Will, including ITEM THIRD, which provides for payment of federal estate taxes out of the residuary.

In addition, the Older Children point to *Estate of Posner v. C.I.R.*, 87 T.C.M. 1288 (T.C. 2004), for the proposition that a savings clause would be ineffective were it to rewrite a will. In *Posner*, the surviving spouse, who had received the benefit of a marital deduction for federal estate tax purposes for property conveyed to her when her husband subsequently died, having disinherited two of her three children. The two children, then, disputed the efficacy of their disinheritance in the mother's will and sought to "resurrect" their father's will, which had divided his residuary estate among the three children. Resolution of the issue depended upon whether the husband's will had granted his wife an *inter vivos* or a testamentary power of appointment over the marital property that qualified for the marital deduction.

The Tax Court, in deciding that Mrs. Posner had <u>no</u> general power of appointment, found notable that:

> . . . Mr. Posner's will contains no language referring to a "general power of appointment" and, indeed, contains no substantive dispositions of the marital trust property. Item II of Mr. Posner's will does not expressly provide for the disposition of income or principal of the marital trust, and it contains no direction regarding the distribution of principal upon termination of the trust. It refers only to the Federal estate tax marital deduction. Item XIV also refers to the marital deduction but contains no language that we might reasonably interpret to grant decedent a general power of appointment. The references to the marital deduction alone in items II and XIV are insufficient to create a general power of appointment in decedent's favor.

*Id.* at 7. (internal citation omitted). The clause to which the Older Children in the present case point to as ineffective in *Posner* stated:

. . . my Trustee shall not have or exercise any authority, power or discretion over the Marital Trust or the income thereof, or the property constituting the same, nor shall any payment or distribution by my Trustee be limited or restricted by any provision of this Will, which would in any way . . . affect the right of my said wife to all income therefrom or her right to dispose of the principal and income thereof in the amount and to the extent necessary to qualify the Marital Trust for the marital deduction for Federal estate tax purposes under the provisions of the law applicable to my estate.

*Id.* at 1.

The distinguishing characteristics of Mr. Posner's will, however, compared to Mr. Clancy's Will in the instant case is that Mr. Clancy did everything in his Will and Second Codicil that Mr. Posner did not. In order to qualify the Family Trust for the QTIP election, Mr. Clancy directed that Mrs. Clancy had a qualifying income interest for life, that she was entitled to all of the income from the property payable annually, that no person had the power to appoint any part of the property to anyone other than her as well as that Mrs. Clancy was provided with the power to request distribution of corpus from the trustee.

We agree with the Older Children that it is clear that a testator could direct that the burden of inheritance taxes could be placed on legatees who otherwise would not have to pay such taxes,[27] as well as payment of estate taxes on the marital share,[28] as the Older

---

[27] In *Pfeufer v. Cyphers*, 397 Md. 643, 919 A.2d 641 (2007), the will provided that all estate, inheritance and other taxes "shall be paid out of the principal of my residuary estate; and such payment shall be made as an expense of the administration of my estate without apportionment." *Id.* at 647; 919 A.2d at 644. The residuary was divided among four individuals, three of whom were lineal descendants of the testator and were, therefore, exempt from inheritance tax. The fourth individual, who was not a relative, was determined by the Orphans' Court to be the person upon whom the burden of

(continued . . .)

27

inheritance taxes was to be placed. We disagreed, stating that the testator's intent was clear:

> It is clear that the testamentary language used by the testator in the case at bar clearly expresses the testator's intent that any, and all, inheritance taxes were to be paid from the residuary estate and were not to be apportioned among, or deducted from, the shares of the individual residuary legatees. Necessarily, therefore, the testator must have intended that the amount of the residuary shares to be distributed would be determined based on the value of the residuary estate after the taxes had been paid, off the top, out of the estate; it was the clear intention of the testator that each individual share of the residuary estate be determined after the taxes were paid on the entire estate, albeit from the residuary estate.

*Id.* at 655, 919 A.2d at 648-49.

[28] In *Second Nat'l Bank of New Haven v. U.S.*, 351 F.2d 489, 494 (2d. Cir. 1965), the Second Circuit Court of Appeals determined that a will, modified by a codicil designed to qualify the Wife's one-third interest in the residuary for the marital deduction, did not also exempt the Wife's share from liability for federal estate taxes. The court concluded that the language of the will stating, "The provisions of any statute requiring the apportionment or proration of such taxes among the beneficiaries of this will or the transferees of such property, or the ultimate payment of such taxes by them, shall be without effect in the settlement of my estate", *id.* at 491, expressed the testator's intention that the Connecticut appropriation statute did not apply, and that estate taxes were to be paid out of the residuary:

> It would be difficult to conceive of a clearer direction expressing the thought that death taxes, together with debts and funeral expenses, were to be paid out of the estate. The first sentence of Article One ('I direct my executors to pay out my just debts and funeral expenses and any death taxes * * *') has been held in cases where similar language was construed not only to shift the tax burden to the residue as an expense of administration, but also as the equivalent of a direction against proration among the residuary legatees. The 'inclusion of them (taxes) in the same classification as debts, funeral expenses * * *' is an expression of 'an intention that they should be paid out of the estate in the same way and from the same funds as these other charges.'

*Id.* at 492-93 (internal citations omitted). The court reached the conclusion that "while the codicil shows a desire to qualify one-third of the residue as a marital deduction", "[i]t does not disclose an intention to have this part of the residue in effect tax free and grossly disproportionate to the other two-thirds." *Id.* at 494.

The Fifth Circuit Court of Appeals, in *First Nat. Bank of Atlanta*, 634 F.2d 212 (5th Cir. 1981), interpreted a testator's intention in a will that provided for the payment of

(continued . . .)

(. . . continued)

estate taxes out of a residuary that was divided into two trusts, one a marital trust, and the other a family trust. The court determined liability for the payment of estate taxes could be borne, in part, by the marital trust. 634 F.2d at 213. The will in Item Three provided that the residue of the estate was to be divided equally between a marital trust and a family trust:

> If my wife survives me, I direct my Executors (after paying all of the above bequests, and after paying all debts, taxes and expenses other than Estate Taxes) to divide the residue of my estate into two parts, which (after adjusting for the insurance and other property payable to my wife hereinafter mentioned) shall be equal in size. I hereby designate these as Parts A and B. There shall be regarded as a portion of my estate assigned to Part A, for the purpose of this calculation only, the following: (1) any insurance on my life which is so payable to my wife as to be lawfully the subject of a marital deduction for Federal Estate Tax purposes, and (2) the value of any other property passing to my wife either outside this Will or under any other Item of this Will in such manner as to qualify as a part of such marital deduction.... There shall not be included in Part A any property as to which such a marital deduction would not be allowed.

*Id.* Item Seven of the will addressed the payment of taxes and stated, "All estate taxes shall be paid from the residue of my estate, and no claim shall be made against any life insurance beneficiaries for payment of any pro rata part of such taxes." *Id.* There was no savings clause in the will. The Fifth Circuit recognized that, "there is no provision for payment of estate taxes only out of the non-marital portion of the estate, even if the residue were to be divided prior to payment of such taxes", *id.* at 214, and the value of the interest passing to the surviving spouse then, for which the marital deduction was allowed, was the net value of the property interest after the payment of estate taxes charged against it.

In *Estate of Avery v. C.I.R.*, 40 T.C. 392 (1963), the United States Tax Court held that the value of the marital deduction was reduced by payment of estate taxes. In that case, the will first instructed that all debts and funeral expenses be paid as soon as practicable and then directed that all estate taxes be paid out of the "general assets of my estate." *Id.* at 393. The Fifth Item of the will devised the "rest, residue and remainder" equally to the testator's surviving wife, son and daughter. *Id.* at 394. There was no savings clause. The Commissioner of Internal Revenue argued that the residue, from which the surviving spouse's one-third was distributed, was that which remained after estate taxes were deducted.

The Tax Court agreed, concluding that, "There is nothing in the will to support the conclusion that the burden of the tax was to fall on the son and daughter and to be borne only by their shares of the estate." *Id.* at 399. The court found that the directive in Item

(continued . . .)

Children have asserted. Mr. Clancy, however, in his estate documents did not burden the marital share with payment of federal estate taxes.

Moreover, were the Family Trust to bear the burden of federal estate taxes, at the time of Mr. Clancy's death, the corpus of that trust would be subject to imposition of federal estate taxes twice, at the time of Mr. Clancy's death as well as when Mrs. Clancy died. The establishment of the QTIP Trust in Mr. Clancy's Will insures that the Younger Child will have to pay estate taxes when Mrs. Clancy dies. 26 U.S.C. § 2044. Certainly, as each party agrees, Mr. Clancy intended to minimize the impact of federal estate taxes in the entirety of his Will, an intent that would be eviscerated by double taxation.

Finally, the Older Children question having the burden of federal estate taxation being placed on them, to the benefit of Mrs. Clancy. Mr. Clancy, however, clearly intended, by the establishment of the QTIP Trust, to benefit Mrs. Clancy to the detriment of the Younger Child, whose remainder could be diminished by Mrs. Clancy's invasion of corpus for need. As a result, all of Mr. Clancy's children are burdened for the benefit of Mrs. Clancy and to avoid federal estate tax.

---

(. . . continued)
Second of the will that "Such taxes as my Executors are hereby directed to pay shall not be charged against or deducted from any such gift, devise and bequest upon or by reason of which such taxes are assessed and paid", referred to only to the specific bequests and not to the distribution of the residue. *Id.* With respect to the marital share, the court concluded that it had to bear the burden of estate taxes as a result of the specific provision in the will that required the payment of taxes from the general assets and, necessarily, from the residue before any distribution. *Id*.

In conclusion, we hold that the property conveyed in the Family Trust as identified in Mr. Clancy's Will and Second Codicil cannot be burdened by the payment of federal estate taxes.

**JUDGMENT OF THE ORPHANS' COURT AFFIRMED; COSTS IN THIS COURT TO BE PAID BY APPELLANTS.**

Orphans' Court for Baltimore City
Estate No. 101962
Argued: June 1, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 93
September Term, 2015

MICHELLE BANDY et al.

v.

ALEXANDRA CLANCY

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A.
(Retired, Specially
Assigned),
    JJ.

Dissenting Opinion by McDonald, J.,
which Barbera, C.J., and Greene, J., join

Filed:  August 24, 2016

The Majority opinion appears to be based on the premise that the pre-eminent value for any testator is the avoidance of taxes. Perhaps there are people like that. If so, one would expect them to have bought a Yugo years ago and scrupulously maintained it to minimize and thereafter avoid the automobile excise tax.

In fact, while paying no more taxes than necessary is significant, most people have other values that also inform important decisions for their lives – and for their heirs. In the purchase of a car, for example, interests in function, reliability, comfort, and safety may dissuade a person from purchasing the cheapest – and least taxed – car, although that may mean paying more in tax. So also is the case in devising an estate plan. As this Court has observed, "[m]inimizing estate and inheritance taxes for beneficiaries ... may not always be the ultimate driving force behind the testator's decisions regarding the provisions contained in his or her will." *Noble v. Bruce*, 349 Md. 730, 757, 709 A.2d 1264 (1998).

There appears to be no dispute that the estate plan implemented by Mr. Clancy's 2007 will (1) provided for the payment of certain expenses and made specific bequests of real and personal property to his wife from his second marriage ("Mrs. Clancy"), (2) set aside a portion of his estate for Mrs. Clancy free of estate taxes ("the Marital Share"), (3) then provided for the payment of taxes, and (4) finally divided the rest of his estate evenly between a trust benefitting Mrs. Clancy (and ultimately their minor child) ("the Family Trust") and trusts benefitting the children from his first marriage ("the Older Children's Trusts").

What is in dispute is the effect on that estate plan of an amendment of that will, known as the Second Codicil.  In the view of Mr. Clancy's Personal Representative,[1] that amendment had the effect of achieving a significant reduction in tax liability (from $26 million to $15.7 million) while retaining the equal distribution (50% - 50%) of the residual of the estate.

The reading of the will urged by Mrs. Clancy would achieve a smaller additional tax reduction (from $15.7 million to $11.8 million), but would cast aside the plan for equal distributions from the residual – despite the fact that the language of the will directing equal distributions was not amended – and skew the distributions from the residual in her favor (63% - 37%).

The Majority opinion opts for Mrs. Clancy's interpretation of the will – an interpretation in which an amended savings clause is construed to contradict basic terms of the original will that remained unchanged.  However, we ordinarily read provisions of wills to be consistent unless there is no way to do so.  In my view, the savings clause can be read consistently with the original will to achieve the tax savings for which codicil was intended without discarding the basic estate plan.  Accordingly, I would adopt the reading of the will offered by Mr. Clancy's Personal Representative.

---

[1] The interpretation that the Majority opinion ascribes to the Older Children is the construction placed on the will and the codicil by Mr. Clancy's Personal Representative. The Older Children also defend that interpretation of the will and the codicil.

**Background**

The following supplement to the Majority opinion's background information will aid in understanding this dissent.

*Gross Estate, Marital Deduction, and Taxable Estate*

A *gross estate* refers to the total dollar value of all property and assets in which an individual had an interest at the time of the individual's death. Federal estate taxes are assessed on the basis of the *taxable estate*, which is the gross estate minus any allowable deductions.[2] The primary deduction relevant here is the *marital deduction*. The value of the marital deduction generally is the full value of all property in the gross estate that passes from the decedent to a surviving spouse, provided that the interest passing to the spouse does not terminate or fail. 26 U.S.C. §2056. A property interest that *does* terminate, and ordinarily would not qualify for the marital deduction, may still qualify for the marital deduction if it is "qualified terminable interest property" ("QTIP").[3] 26 U.S.C. §2056(b)(7).

*QTIP and Savings Clauses*

To qualify a trust as a QTIP trust, the property must pass from the testator to that trust, the surviving spouse must have a qualifying income interest for life, and the

---

[2] There can be other adjustments, but they are not relevant here.

[3] A testator may have various reasons for passing a terminable interest in a trust to a spouse. For example, the testator may want to require that someone other than the spouse administer the assets in the trust so that the spouse receives the income from the assets but cannot deplete those assets.

3

necessary election must be made by the personal representative. 26 U.S.C. §2056(b)(7)(B)(i). A surviving spouse has a qualifying income interest for life if:

> (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct[4] interest for life in the property, and

> (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

26 U.S.C. §2056(7)(B)(ii). In order to treat property as QTIP, the personal representative must make an irrevocable QTIP election on the appropriate tax return. 26 U.S.C. §2056(7)(B)(v).

Because wills often include provisions that may conflict with the QTIP requirements but that provide guidance for other trusts not intended to qualify as QTIP, a testator will often include a savings clause in order to ensure that a trust intended to qualify as QTIP in fact does so. *Cf.* Edward C. Renenger, *Can a State's Marital Deduction Savings Clause Reform a Defective Marital Deduction? Estate of Davis v. Commissioner*, 57 Tax Law 615, 619 (2004) ("The requirements to meet the section 2056(b)(5) exception to the non-deductibility of terminable interests are rigorous ... [W]here the rules are often extremely technical and the stakes may be high, it is not surprising that advisers seek to minimize risks of disqualification. Using a marital deduction savings clause is one way to minimize such risks.").

---

[4] In this context, the term "usufruct interest" refers to a right to use the fruits or profits of the income resulting from the trust.

*Apportionment of Obligation to Pay Taxes*

While the amount of federal estate tax is determined by federal law, the allocation of responsibility for paying that tax is determined by state law. *Riggs v. Del Drago*, 317 U.S. 95, 97-98 (1942).

In Maryland, the tax liability of an estate is generally apportioned among the interested parties under the apportionment statute. Maryland Code, Tax-General Article ("TG"), §7-308. By default, that apportionment is made "in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all the persons interested in the [taxable] estate." TG §7-308(b)(1). Stated differently, if a person has a 45% interest in the taxable estate, then that person must pay 45% of the estate tax due. Therefore, under the apportionment statute, a surviving spouse who receives property that qualifies for the marital deduction would not pay estate taxes based on the property covered by the marital deduction because that share is not part of the taxable estate. *See* TG §7-308(e)(1) (in apportioning liability for federal estate tax, allowance is to be made for any exemptions or deductions). Similarly, under the apportionment statute, responsibility for paying those taxes would not be allocated to a QTIP trust.

*Opting Out of Apportionment*

A testator, however, may customize how the estate taxes are paid, as is evident by the fact that the testator may, in the will, opt out of the general apportionment scheme.[5] TG §7-308(k); *Pfeufer v. Cyphers*, 397 Md. 643, 655, 919 A.2d 641 (2007) ("the intent of the testator, as ascertained from the language of the will, controls the source of the funds to be used to pay inheritance taxes so long as there is no conflict with the applicable statute, other law or public policy."); *see also Johnson v. Hall*, 283 Md. 644, 649, 392 A.2d 1103 (1978) (explaining that the will must clearly indicate the testator's intent to opt out of the apportionment statute). A testator may specify the portion of the estate's assets from which estate taxes are to be paid even when that customization may result in taxes being paid from a portion of the estate that would otherwise qualify for a deduction in the computation of the tax. *See Pfeufer,* 397 Md. at 660; *accord Second Nat'l Bank of New Haven v. United States*, 351 F.2d 489, 494 (2nd Cir. 1965) ("The codicil shows a desire to qualify one-third of the residue as a marital deduction. It does not disclose an intention to have this part of the residue in effect tax free and grossly disproportionate to the other two-thirds. That which the testator did not choose to do during his lifetime the courts should not do after his death.").

---

[5] This distinction between the computation of a tax and the payment of that tax is not unique. For example, one who receives the proceeds of a Roth IRA excludes those funds from the calculation of his or her income tax liability, but may well pay that liability with those funds. In the circumstance of the marital deduction, computation and payment of taxes are intertwined to the extent that funds used to pay estate taxes are not counted as part of the deduction. *See* 26 U.S.C. §2056(b)(4)(A).

By opting out of apportionment, a testator may qualify a larger portion of the estate for the marital deduction – with the resulting benefit in the computation of the tax – but still allocate payment of estate tax to a portion of the estate intended to benefit the surviving spouse and thereby pass a larger proportion of the estate to all of the estate's beneficiaries, as well as the surviving spouse.

**Discussion**

*The Text of the Will and Codicil*

Construction of a will, like interpretation of any other legal text, begins with the plain meaning of the words of the document. *Pfeufer*, 397 Md. at 649. When interpreting a will, a court must ascertain and effectuate the testator's expressed intent, as gathered from an examination of the will and codicils as a whole, as if they were one complete document. *Id.*; *McIntyre v. Byrne*, 217 Md. 71, 77, 141 A.2d 692 (1958) ("[t]he primary object in construing a will is to ascertain the intention of the testator from the whole instrument"); *Associated Professors of Loyola College of City of Baltimore v. Dugan*, 137 Md. 545, 113 A. 81 (1921). In general, we interpret a will so as to harmonize its provisions and avoid conflicts, such that the interpretation gives effect to each provision wherever possible. *McIntyre*, 217 Md. at 77.

Resolution of this case thus begins with the text of the will and codicils. As the Majority opinion sets forth, the will provides that a portion of the estate is "set apart" (the "Marital Share") before the payment of taxes to fund a Marital Trust. Majority slip op. at 12-14 (Item Third, Item Sixth (A)). The will then provides that, after the Marital Share is set apart, estate and related taxes are to be paid out of the residuary estate, subject to

7

limitations not relevant here. *Id.* (Item Third). There appears to be no dispute among the parties that, in directing how estate taxes are to be paid, Mr. Clancy opted out of the apportionment statute.[6] The will then provides that "one-half of the remainder of my residuary estate shall be paid over and distributed to my trustee as [the Family Trust]" and "the other one-half of the remainder of my residuary estate shall be" paid over and distributed to the trustee as the Older Children's Trusts. *Id.* (Item Sixth (B), (C)). Unlike the provision concerning the part of the estate (the Marital Share) used to fund the Marital Trust, the parts of the estate used to fund the Family Trust and the Older Children's Trusts are not to be "set apart" before the payment of taxes.

The will also contained a Savings Clause to ensure that the Marital Share would qualify for the marital deduction when estate taxes are computed. It explicitly limited the Personal Representative's or trustees' authority to do anything that would prevent the estate "from receiving the benefit of the marital deduction as hereinbefore set forth." *Id.* (Item Twelveth (D)).[7]

---

[6] The Orphans' Court decision in this case discoursed at some length on whether the apportionment statute applied before accepting the proposition that the apportionment statute did not apply.

[7] Specifically, it provided:

> [N]either my personal representative nor my trustee shall have or exercise any authority, power, or discretion over the Marital Share, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will that would in any way prevent my estate from receiving the benefit of the marital deduction as hereinbefore set forth.

8

The Second Codicil[8] amended the will in several respects to allow the Family Trust to qualify for the marital deduction when estate taxes are computed. For example, that codicil eliminated a provision of the will that terminated Mrs. Clancy's interest if she remarried and also eliminated a provision of the will that allowed the trustee discretion to use the funds in the Family Trust for the benefit of the minor child during Mrs. Clancy's lifetime. *See* Majority slip op. at 15-16 (amendments of Item Eighth). Consistent with those amendments, the Second Codicil also amended the Savings Clause to ensure that the Family Trust, like the Marital Share, would qualify for the deduction when taxes are computed.[9] However, with respect to the *payment* of taxes, the Second Codicil did *not* amend Item Third to provide that the Family Trust was to be set apart before the payment of taxes. Thus, the plain meaning of the text of the will, as amended by the Second Codicil, requires that the Marital Share and the funds intended for the Family Trust both qualify for the marital deduction when taxes are computed; however, the Marital Share is

---

[8] There were two codicils to the will. The First Codicil is not at issue here.

[9] That portion of the Second Codicil provides, in pertinent part:

> [N]either my personal representative nor my trustee shall have or exercise any authority, power or discretion over the Marital Share or the Non-Exempt Family Residuary Trust or the income thereof, or the property constituting the Marital Share or the Non-Exempt Family Residuary Trust, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will, such that, in any such event, my estate would be prevented from receiving the benefit of the marital deduction as hereinbefore set forth.

"set apart" from the funds used to pay those taxes while the one-half of the residuary estate used to fund the Family Trust is not.

*Reconciling the Will and Second Codicil*

In short, the will provides that the Family Trust and the Older Children's Trusts receive equal shares of the residual of the estate after payment of taxes. The Second Codicil provides that the estate should receive the benefit of the marital deduction with respect to both the Marital Share and the Family Trust in the computation of estate tax liability. If these two provisions can be reconciled, then ordinary principles of will construction require that we read them to be consistent.

As an initial matter, we ought to expect that these two provisions can be reconciled. While the operative language in the amended Savings Clause comes from the Second Codicil, the original will contained nearly identical language. Here, there is no evidence of a textual conflict. All that the Savings Clause requires – both before and after its amendment by the Second Codicil – is that the estate "receiv[e] the benefit of the marital deduction as hereinbefore set forth." In order to receive the benefit of the marital deduction, the estate's personal representative must file the appropriate form so as to qualify for QTIP treatment the property in which Mrs. Clancy will have a terminable interest — as relevant here, the Family Trust – and not exercise the various discretionary powers authorized under the will (*e.g.,* Item Thirteenth) in a way that would undermine that election. Thus, the Savings Clause can be read to require merely that the Personal Representative fill out the appropriate form and abide by the other changes to the Family

Trust to qualify the Family Trust for QTIP treatment.[10]  Doing so in no way conflicts with paying the taxes out of the residual before the Family Trust and Older Children's Trusts are funded and thereby maintaining the equal distributions specified in the will.

*The Majority Opinion's Approach*

In adopting Mrs. Clancy's preferred interpretation the Majority opinion finds an "apparent conflict"[11] and resolves it by holding that the Second Codicil "trumps" the specific directions in the will (in Item Third) concerning the payment of taxes, even though the Second Codicil made no change to those directions.  Majority slip op. at 20-21.  In my view, the Majority opinion is mistaken and there is no need to resort to such radical surgery.

The reasoning of the Majority opinion appears to be that the Savings Clause, by itself, mandates that the residual estate be distributed so as to obtain the *maximum* marital deduction with respect to the Family Trust, despite the fact that Item Third prescribes such treatment only for the Marital Share.  This entails "setting apart" one-half of the residual destined for the Family Trust *before* the payment of taxes, with the result that the

---

[10] The Majority opinion appears to acknowledge this.  *See* Majority slip op. at 20 ("The Older Children and Mrs. Clancy, as well as the personal representative, all agree that the Second Codicil qualified the Family Trust for the QTIP election").

[11] At least, the Majority opinion sometimes appears to do so.  On the other hand, the Majority opinion also states, "The Second Codicil did not, however, specifically address, in any way, the Will provision that instructed that taxes were to be paid out of the residuary estate of which the Family Trust was a part."  Majority slip op. at 20.  But if that were true, then there would be no conflict, and that provision of the original will concerning payment of taxes from the residual after the Martial Share is set aside should remain operative.

11

half of the residual devoted to the Older Children's Trusts absorbs all of the responsibility for payment of taxes. Thus, an amendment of the will that on its face affected only the *computation* of taxes is being construed to alter the directions in the will for the *payment* of taxes and radically changes the relative distributions to the beneficiaries.

In essence, the Majority opinion, without explanation, reads the Second Codicil as expressing Mr. Clancy's intent that the distribution of his estate maximize the marital deduction at all costs. There is simply no basis for this interpretation. The Second Codicil provides that the estate must receive "the benefit of the marital deduction as hereinbefore set forth," not "the benefit of the *maximum* marital deduction," so the text provides no support to the Majority opinion's reading. As justification for its interpretation, the Majority opinion relies on a case in which the will specifically provided that it was to preserve "the *maximum* marital deduction." *See* Majority slip op. at 21 citing *Northeastern Pennsylvania Nat. Bank & Trust Co. v. U.S.*, 360 F. Supp 116, 117 (M.D.Pa. 1973) ("The direction to obtain the *maximum* marital deduction is the clearest and the predominant evidence of Rodgers' intent.") (emphasis added).[12] By

---

[12] The Majority opinion also cites an IRS revenue ruling that is similarly distinguishable from this case. *See* Majority slip op. at 22-23 (citing Rev. Rul. 75-440 (1975)). That ruling concerned a will that directed the creation of a trust in an amount equal to the "maximum marital deduction" and gave further detailed directions as to the computation of that amount to ensure that the maximum amount was transferred to the trust. Consistent with those provisions, a savings clause in the will limited any action by the testator's Fiduciary that would "lose all or any part of the tax benefit afforded my estate by the Marital Deduction." By contrast, the Savings Clause in Mr. Clancy's will does not contain language concerning the maximum marital deduction or the loss of "any part" of the marital deduction.

12

contrast, the Savings Clause of the Second Codicil in this case does not specify that the estate should receive the *maximum* possible marital deduction.[13]

The Majority opinion also reasons that, if taxes are paid out of any part of the residual estate before the Family Trust is funded, estate tax will be paid on funds that might otherwise have become part of the Family Trust and would have had the benefit of the marital deduction. Majority slip op. at 23-24. But that appears likely to happen any time a testator opts out of the apportionment statute and elects to allocate the payment of some part of the tax to assets that could otherwise fund a distribution that would qualify for the marital deduction.[14] It is telling that the testator here referred to the Marital Share being "set apart" before the payment of taxes, but did not use that language in relation to the funds intended for the Family Trust – nor amend Item Sixth in that respect as part of the Second Codicil.

---

[13] It is true, as the Majority opinion observes (Majority slip op. at 4-5) that federal law has been amended over the years to remove a statutory cap on the maximum marital deduction. Of course, that does not mean there is no longer a "maximum" deduction for particular circumstances.

[14] For example, in *Estate of Fine v. Commissioner*, 90 T.C. 1068 (1988), the will directed the payment of taxes out of the residual estate "without apportionment" and then provided for distribution of the remainder of the residual in specific shares to the testator's widow and other relatives. A savings clause limited the authority of the executor to do anything that would "lose all or any part of the tax benefit afforded by the marital deduction." The Tax Court construed the will to provide for payment of taxes out of funds that could otherwise have funded the widow's share and therefore would have qualified for the marital deduction. The court also noted that the testator contemplated such a result in opting out of the state apportionment statute.

13

**Conclusion**

Mrs. Clancy's interpretation – adopted by the Majority opinion – would skew the distribution of the residual estate significantly in her favor contrary to basic provisions of the will while reducing the estate's tax liability somewhat more than what it would otherwise be. It does so by interpreting the Savings Clause to effect a radical change in the estate plan without any explicit direction to do so. The Personal Representative's construction of the will and codicil would treat the Savings Clause for what it is – a savings clause – and maintain the equal distribution of the residual specified in the will, both originally and as amended, while achieving the significantly reduced tax liability that is the evident aim of the Second Codicil.

Even assuming that the Second Codicil *could* mean what the Majority opinion reads it to mean – which is far from clear – we ordinarily resolve textual ambiguities in favor of consistency, not inconsistency. Where there are two possible interpretations of a provision of a codicil, one which conflicts with the original will and one which does not, our precedents favor adoption of the interpretation that does not conflict. Thus, even if the Second Codicil were ambiguous, it ought to be interpreted to be consistent with the original will rather than to contradict it.

Chief Judge Barbera and Judge Greene have advised that they join this opinion.